**THE LAW OFFICES OF BENJAMIN TAYLOR**
BENJAMIN TAYLOR (SBN 240636)
btaylor@taylorlawfirmpc.com
1880 Century Park East, Suite 714
Los Angeles, CA 90067
Tel: (310) 201- 7600
Fax: (310) 201-7601

OF COUNSEL
**GS2LAW PLLC**
ROBERT D. GARSON (PRO HAC VICE)
rg@gs2law.com
JOHN R. LANE (PRO HAC VICE)
jl@gs2law.com
20803 Biscayne Blvd, 4th Floor
Aventura, FL 33154
Tel: (305) 780-5212
Fax: (347) 537-4540

**Attorneys for Defendant Walmart, Inc.**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>WALMART, INC., and DOES 1-10, inclusive,<br><br>     Defendants. | Case No. 2:20-cv-09521 FLA-E<br><br>**DEFENDANT WALMART, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: April 1, 2022<br>Time: 1:30 p.m.<br>Courtroom: 6B<br>Hon. Fernando L. Aenlle-Rocha |

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

## NOTICE OF MOTION AND MOTION

To all parties and their counsel of record, please take notice that on April 1, 2022 at 1:30 p.m. in Courtroom 6B of the above-captioned Court, located at First Street Courthouse, 350 West 1st Street, Courtroom 6B, Los Angeles, CA 90012-4565, Defendant Walmart, Inc. ("Defendant") will and hereby does move pursuant to Fed. R. Civ. P. 56 for the Court to enter summary judgment (i) that Defendant has not infringed upon any valid unregistered trade dress of Deckers Outdoor Corporation ("Plaintiff" or "Deckers"); (ii) that U.S. Pat. No. D866,941 (the "'941 Design Patent") is invalid and that Defendant has not infringed any valid claims of the '941 Design Patent, (iii) the California state unfair competition law claims are preempted; and (iv) the state common law trade dress claim is identical to the federal trade dress claim.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Dr. David Neal, Robert Garson, and Lenny M. Holden filed concurrently herewith and supporting exhibits, Defendant's Statement of Undisputed Facts and Conclusions of Law ("SOF"), any matters of which this Court may take judicial notice, and such additional evidence or argument as may be presented at or before the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place between January 25-31, 2022. The parties were unable to

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

resolve any of the disputed issues regarding Plaintiff's claims and Defendant's summary judgment positions, resulting in the filing of the present motion.

Dated: February 22, 2022

**GS2 LAW PLLC**

**By:**    /s/ John R. Lane
Robert D. Garson (Pro Hac Vice)
rg@gs2law.com
John R. Lane (Pro Hac Vice)
jl@gs2law.com
20803 Biscayne Blvd. 4th Floor
Aventura, FL 33154
Tel: (305) 780-5212
Fax: (347) 537-4540

**THE LAW OFFICES OF
BENJAMIN TAYLOR**

Benjamin Taylor (SBN 240636)
1880 Century Park East, Suite 714
Los Angeles, CA 90067
Tel: (310) 201-7600
Fax: (310) 201-7601

*Attorneys for Defendant, Walmart, Inc.*

# TABLE OF CONTENTS

Table of Authorities………………………………………………...…………….iii

I. Introduction and Brief Statement of the Case……………………………...1

II. Legal Standard………………………………………………………………2

    A.    Summary Judgment Standard……………………………………...2

    B.    Design Patent Legal Standards……………………………………4

        i.    Invalidation of a Design Patent………………………………4

        ii.    Infringement…………………………………...………………7

    C.    Trade Dress Legal Standards…………………………………….....8

        i.    Acquired Distinctiveness Through Secondary Meaning………9

        ii.    Non-Functionality……………………………………………11

        iii.  Likelihood of Confusion……………………………………...11

    D.    Preemption of State Unfair Competition Claim……………………12

III. Argument………………………………………………………...……….13

    A.    The '941 Design Patent is Invalid…………………………….....13

        i.    Deckers' Prior Sold *Koolaburra* Brand Products Invalidates the '941 Design Patent…………………………..14

        ii.    Several Other Prior Sold Third-Party Products Invalidate the '941 Design Patent…………………………....16

    B.    The KK Sandal Does Not Infringe the '941 Design Patent…………19

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

         i.    Should the Validity '941 Patent Survive the Prior Art Challenge, it is Extremely Narrow in Scope……………………………………19

         ii.   The KK Sandal Does Not Infringe the '941 Design Patent…..20

C.    Deckers' Has Failed to Establish Trade Dress in a Single UGG Fluff Yeah Style………………….…………………21

         i.    The UGG Fluff Yeah Sandal Has Not Acquired Secondary Meaning……………………………………………22

         ii.   The UGG Fluff Yeah is Functional………………………….23

         iii.  Likelihood of Confusion……………………………………..24

D.    The Unfair Competition Law Claims are Preempted……………….24

IV.  Conclusion…………………….…………………………………..25

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**

*Accuride Int'l, Inc. v. SSW Holding Co., Inc.*
    2010 WL 11538247 (C.D.Cal. 2010)…………………………………..6

*adidas Am., Inc. v. Sketchers USA, Inc.*
    890 F.3d 747 (9th Cir. 2018)……………………………………………10

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)……………………………..……………………2,3,4

*Arpin v. Santa Clara Valley Transp. Agency*
    261 F.3d 912 (9th Cir. 2001)……………………………………………4

*Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*
    685 F. Supp.2d 1001(N.D.Cal. 2009)…………………..…………....10,11

*Capbran Holdings, LLC v. Firemall LLC.*
    2017 WL 4769434 (C.D.Cal 2017)…………….……………………….7

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)……………….……………………………………3

*Cicena Ltd. v. Columbia Telecomm. Grp.*
    900 F.2d 1546 (Fed. Cir. 1990)……………..…………………………11

*Clamp Mfg. Co. v. Enco Mfg. Co.*
    870 F.2d 512 (9th Cir. 1989)……………………………………………10

*Cleary v. News Corp.*
    30 F.3d 1255 (C.D.Cal 2015)……………………………………….12,13

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*
    942 F.3d 1119 (Fed. Cir. 2019)……………………..…………………..8

*Crocs, Inc. v. Int't Trade Comm'n*
    598 F.3d 1294 (Fed. Cir. 2010)……………………..………………….7

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

2015 WL 12731929 (C.D. Cal. 2015)……………………………….8,12,24

*Deckers Outdoor Corp. v. J.C. Penney Co. Inc.*
    45 F.Supp.3d 1181 (C.D.Cal. 2014)……………....…………………..12

*Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*
    2017 WL 2604086 (C.D.Cal. 2017)……………....………………….5,6

*Dreamwerks Prod. Grp. Inc. v. SKG Studio d/b/a Dreamworks  SKG*
    142 F.3d 1127 (9th Cir. 1998)……………....………………………..12

*Durling v. Spectrum Furniture Co.*
    101 F.3d 100 (Fed. Cir. 1996)……………………………………….....6

*Egyptian Goddess, Inc. v. Swisa, Inc.*
    543 F.3d 665 (Fed. Cir. 2008)………………………………………....7

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*
    796 F.3d 1312 (Fed. Cir. 2015)……………....……………………..…8

*Express, LLC. v. Forever 21, Inc.*
    2010 WL 3489308 (C.D.Cal. 2010)……………………………………9

*EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.*
    384 F.Supp.3d 1065 (E.D.Cal. 2018)……………….....…………10,11,23

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*
    525 F. Supp. 3d 1145 (S.D.Cal. 2021)………………………………5,7,8

*Grand Gen. Accessories Mfg. v. United Pac. Indus. Inc.*
    732 F.Supp.2d 1014 (C.D.Cal. 2010)…………………………………5,6

*High Point Design LLC v. Buyers Direct, Inc.*
    730 F.3d 1301 (Fed. Cir. 2013)………………………………………...5

*High Point Design LLC v. Buyer's Direct, Inc.*
    621 F. App'x 632 (Fed. Cir. 2015)……………….…………………..7,8

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

*Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Emp. of Transferred GE Operations*
    244 F.3d 1109 (9th Cir. 2001)……………………………………..……4

*Int'l Seaway Trading Corp. v. Walgreens Corp.*
    589 F.3d 1233 (Fed. Cir. 2009)…………………………..…………5, 6

*KSR Int'l Co. v. Teleflex Inc.*
    550 U.S. 398 (2007)…………………………………….………………6

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*
    988 F.2d 1117 (Fed. Cir. 1993)…………………………..…………4,12

*Levi Strauss & Co. v. Blue Bell, Inc.*
    778 F.2d 1352 (9th Cir. 1985)……………………………..……………9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986)……………………………………………..……3

*Medcursor Inc. v. Shenzen KLM Internet Trading Co., Ltd.*
    543 F.Supp.3d 866 (C.D.Cal. 2021)………………………………….6

*NIKE, Inc. v. Skechers U.S.A., Inc.*
    2020 WL 10486482 (C.D.Cal. 2020)…………………..……………6,7

*Payless Shoesource Inc. v. Reebok International Ltd.*
    804 F.Supp. 206 25 U.S.P.Q.2d 1130 (D.C.Kan. 1992)………………..12

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*
    998 F.2d 985 (Fed. Cir. 1993)………………………………………7,20

*Reebok International Ltd. v. Alon*
    5 U.S.P.Q.2d 1830 (C.D.Cal. 1987)…………………………...…..12

*Roux Labs., Inc. v. Clairol Inc.*
    427 F.2d 823, 166 U.S.P.Q. 34, 39 (C.C.P.A. 1970)…………..…………9

*Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*
    849 F.Supp.2d 963 (S.D.Cal. 2012)……...…….…………9,10,11,21,22

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*
    225 F.3d 1349 (Fed. Cir. 2000)……………………………………………..……..5

*Soremekun v. Thrifty Payless, Inc.*
    509 F.3d 978 (9th Cir. 2007)…………………………………...………3

*Spark Industries, LLC v. Kretek Intern., Inc.*
    2014 WL 4365736 (C.D.Cal. 2014)……………………...………...11

*Sport Dimension, Inc. v. Coleman Co., Inc.*
    820 F.3d 1316 (Fed. Cir. 2016)…………………………..…...7,15,19,20

*Sun-Mate Corp. Koolatron Corp.*
    2010 WL 11552980 (C.D.Cal. 2010)…………………………..………4

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*
    809 F.2d 626 (9th Cir. 1987)…………………………………...…..….3

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*
    529 U.S. 205 (2000)……………………………………………………9

*Wash. Mut. Inc. v. U.S.*
    636 F.3d 1207 (9th Cir. 2011)…………………………...…………2

**STATUTES**

FED. R. CIV. P. 56(A)…………………………………………………...1

15 U.S.C. §1125(a)(3)……………………………………………………9

35 U.S.C. § 102(a)………………………………………………………6

35 U.S.C. 102(b)(1)………………………………………………………7

**OTHER**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
    § 32:190 (5th ed. 2021)…………………………………10

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION AND BRIEF STATEMENT OF THE CASE

Deckers has asserted in this action a design patent, U.S. Patent No. D866,941, for a common and ubiquitous footwear configuration, filed in 2018 and issued in 2019, that is fatally flawed and undoubtedly invalid due to Decker's conscious failure to perform a single prior art search before it filed its application with the USPTO or at any time during its examination. Such an omission was, to say the least, curious for a leading footwear company having abundant resources and knowledge of the industry and the competitive standing of others in the market. A straightforward prior art search by Defendant's search agent yielded a multitude of very similar designs offered, used and sold years before the effective filing date of Decker's application, rendering its design patent invalid. Moreover, one of the closest examples of prior sold and publicly available products found was marketed through Deckers' UGG brand itself as early as 2014 (quite possibly much earlier) under its own "Koolaburra" sub-brand of footwear, which Deckers conspicuously suppressed in discovery. Many other prior product designs on the market as early as 2010 similarly anticipate the very slipper or sandal design Deckers now aggressively asserts in its serial litigation campaign against multiple footwear competitors and retailers in addition to Defendant, Walmart, Inc.

As if to underscore Deckers' doubt in the validity of its own design patent, Deckers, in a classic gesture of overreach, also asserts unregistered trade dress rights

1

based on a product configuration, launched only a few years ago in 2018, which represents only one of many of its sandal styles sold under the UGG "Fluff Yeah" trademark. In the past Deckers attempted to establish trade dress for one of its 'iconic' styles with the United States Patent and Trademark Office, and failed. Now twice shy, Deckers seeks to circumvent that process through this case. Defendant's experts have unsurprisingly confirmed the complete absence of secondary meaning among consumers in the single UGG sandal style Deckers futilely claims has achieved iconic status because it has graced the feet of a few celebrities and has become one of its best-selling items of footwear. As demonstrated by the abundant factual and expert evidence presented in this motion, and the application of compelling law to those facts, this case requires entry of summary judgment as to all claims now pending before the Court.

## II.    LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). A fact is material when it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id*. Note, that

"[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Instead, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. When ruling on a summary judgment motion, the Court must view all inferences drawn from the underlying facts in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The moving party has the initial responsibility to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the moving party can either: (1) present evidence that negates an essential element of the nonmoving party's case; or (2) demonstrate that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id*. at 322-23. Where the nonmoving party bears the burden of proof at trial, the moving party can prevail by pointing out that the nonmoving party lacks evidence to support its case. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden by pointing to a lack of evidence, the opposing party must then set out "specific facts" showing a genuine issue for

3

trial to defeat the motion. *Anderson*, 477 U.S. at 250. The nonmoving party must present probative evidence in support of its claim or defense and "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position" is insufficient. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [their] pleadings." *Anderson,* 477 U.S. at 256.

When considering a motion for summary judgment, "the proper task is not to weigh conflicting evidence, but rather to ask whether the non-moving party has produced sufficient evidence to permit the fact finder to hold in his favor." *Ingram v. Martin Marietta Long Term Disability Income Plan for Salaried Emp. of Transferred GE Operations*, 244 F.3d 1109, 1114 (9th Cir. 2001).

**B. Design Patent Legal Standards**

i. Invalidation of a Design Patent

Ordinarily, a patented design is claimed as shown by its drawings. *Sun-Mate Corp. Koolatron Corp.*, 2010 WL 11552980 at *3 (C.D.Cal. 2010)(quoting, *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1122 (Fed. Cir. 1993)). A valid design patent must be (1) new, (2) original, (3) ornamental, (4) nonobvious to a person of ordinary skill in the art, and (5) not primarily for the purpose of serving a functional or utilitarian purpose. *Golden Eye Media USA, Inc. v. Trolley Bags UK*

4

*Ltd.* 525 F. Supp. 3d 1145, 1177 (S.D.Cal. 2021). While there is a presumption that issued patents are valid, the Court can hold the design patent invalid if it is obvious, non-ornamental, and/or functional. *Id.*

Obviousness is determined by a "finding that (1) a primary reference exists, 'the design characteristics of which are basically the same as the claimed design,' and (2) reasons, such as prior art references, to modify the primary reference's design to create a design that has the same overall visual appearance as the claimed design, also exist.'" *Id.* (quoting, *High Point Design LLC v. Buyers Direct, Inc.,* 730 F.3d 1301, 1311-12 (Fed. Cir. 2013)). Notably, "[a]n obvious modification to a single primary prior art reference can also invalidate a patent, even without any secondary references." *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, 2017 WL 2604086 at *1 (C.D.Cal. 2017)(citing, *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009); and *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000)).

Critically, obviousness for design patents is decided from the vantage point of a designer with ordinary skill or capability in the field, to which the design pertains and has perfect knowledge of all pertinent prior art. *Grand Gen. Accessories Mfg. v. United Pac. Indus. Inc.*, 732 F.Supp.2d 1014, 1024 (C.D.Cal. 2010). To consider this vantage point, the Court may consider expert opinion testimony." *Id.* Further, "when a determination of obviousness rests on prior art that was not disclosed to the patent

examiner, the presumption of validity is 'much diminished.'" *Accuride Int'l, Inc. v. SSW Holding Co., Inc.* 2010 WL 11538247 at *7 (C.D.Cal. 2010) (quoting, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007)).

To determine whether a primary reference exists, the Court must "'(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates 'basically the same' visual impression.'" *NIKE, Inc. v. Skechers U.S.A., Inc.*, 2020 WL 10486482 at *5 (C.D.Cal. 2020)(quoting, *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)). Prior art is considered art that "generally must have been patented, described in a printed publication, in public use, or offered for sale" before the effective filing date of the subject patent. 35 U.S.C. § 102(a); *accord Deckers v. Romeo & Juliette*, 2017 WL 2604086 at *2; *Grand*, 732 F. Supp.2d 1024; *see also, Medcursor Inc. v. Shenzen KLM Internet Trading Co., Ltd.*, 543 F.Supp.3d 866, 871 (C.D.Cal. 2021). Under 35 U.S.C. 102(a)(1) prior art that was offered for sale can be considered no matter whether the sale activity took place since there are no geographic limits. 35 U.S.C. 102(a)(1). Prior art may be based in art that was offered for sale by the claimed inventor themselves "or by another who obtained the subject matter directly or indirectly from the inventor" so long as the offer for sale occurred more than one year from the effective filing date of the subject patent application. 35 U.S.C. 102(b)(1).

6

ii.    <u>Infringement</u>

The patent holder must prove design patent infringement by a preponderance of the evidence and is determined with the "ordinary observer" test. *Golden Eye*, 525 F. Supp. 3d at 1178; and *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). The "ordinary observer" test requires that "'an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design.'" *NIKE, Inc.*, 2020 WL 10486482 at *4 (quoting, *Crocs, Inc. v. Int't Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010)). To determine patent infringement, the Court must: (1) construe the claims of the design patent to determine its meaning and scope; and (2) compare the properly construed claims to the accused design. *Capbran Holdings, LLC v. Firemall LLC*, 2017 WL 4769434 at *5 (C.D.Cal 2017). The analysis requires elimination of any non-novel or functional elements of the design to properly identify the scope of the claim. *Sport Dimension, Inc. v. Coleman Co., Inc.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016).

The comparison for infringement must be between the accused product and the patented design, not to the commercial embodiment. *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.,* 998 F.2d 985, 990 (Fed. Cir. 1993); *see also*, *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015)(stating, "[w]e have long-cautioned that it is generally improper to determine infringement by

7

comparing an accused product with the patentee's purported commercial embodiment.").

Further, the "ordinary observer" test for design patent infringement requires the fact finder to 'compar[e] similarities in overall designs, not similarities of ornamental features in isolation.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.* 796 F.3d 1312, 1335 (Fed. Cir. 2015). That said, "where the claimed design closely resembles the designs of prior art, minor 'differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer.'" *Golden Eye*, 525 F.Supp.3d at 1179 (quoting, *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1129 (Fed. Cir. 2019)).

## C. Trade Dress Legal Standards

Where trade dress infringement is already asserted under the Lanham Act, the California common law claim should be treated as one in the same. *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.* 2015 WL 12731929 at *3 (C.D. Cal. 2015). To prevail on an infringement claim for trade dress in product configurations (or product shapes), the plaintiff must prove: (1) that the plaintiff owns a protectable trade dress in a clearly articulated design or combination of elements that has acquired distinctiveness through secondary meaning; (2) that the trade dress is nonfunctional; and (3) defendant's trade dress creates a likelihood of confusion as to source, or as

8

to sponsorship, affiliation or connection. 15 U.S.C. §1125(a)(3); *Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F.Supp.2d 963, 980, 984 (S.D.Cal. 2012). Trade dress in product configurations can never be inherently distinctive. *Id.* (citing, *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 213 (2000)).

### i. Acquired Distinctiveness Through Secondary Meaning

Secondary meaning is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.* 778 F.2d 1352, 1354 (9th Cir. 1985) (en banc) (internal quotations omitted). Establishing secondary meaning depends on the facts of each case and the nature of the mark sought to be registered, but, in any event, the proponent for trade dress faces a heavy burden in establishing distinctiveness. *Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 829, 166 U.S.P.Q. 34, 39 (C.C.P.A. 1970).

A plaintiff may establish secondary meaning through direct or circumstantial evidence. *Express, LLC. v. Forever 21, Inc.*, 2010 WL 3489308 (C.D.Cal. 2010). Circumstantial evidence includes "the exclusivity, manner, and length of use, amount and manner of advertising, amount of sales and the number of customers, and plaintiff's established place in the market." *Clamp Mfg. Co. v. Enco Mfg. Co.* 870 F.2d 512, 517 (9th Cir. 1989). However, direct evidence such as "[a]n expert survey of purchasers typically provides the most persuasive evidence of secondary

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

meaning." *Seirus v. Gordini*, 849 F.Supp.2d at 984. While courts have had varied conclusions about what percentage of persons who use the trade dress to identify a source sufficient to constitute a "significant" amount, many have found percentages between 10 – 25% to be insufficient proof of secondary meaning. *6 McCarthy on Trademarks and Unfair Competition,* 32:190 (5th ed.) (Dec. 2021). Note, that if the "plaintiff cannot meet its burden concerning distinctiveness, arguments concerning functionality and likelihood of confusion need not be addressed." *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, 685 F. Supp.2d 1001, 1016 (N.D.Cal. 2009).

     As mentioned above, proving secondary meaning is an incredibly high bar to meet.[1] Courts are unlikely to find secondary meaning where the timeframe of use is relatively brief. Indeed, "[c]ourts frequently reject secondary meaning claims based on short periods" despite "evidence of unsolicited media coverage, television and newspapers advertisements, and sales success" over an 18-month period. *EZ Pedo, Inc. v. Mayclin Dental Studio, Inc.* 384 F.Supp.3d 1065, 1075 (E.D.Cal. 2018)*; Cicena Ltd. v. Columbia Telecomm. Grp.*, 900 F.2d 1546, 1551 (Fed. Cir. 1990)(concluding that use for only 18 months is "evidence point[ing] strongly away from a finding of secondary meaning.").

---

[1] For example, the adidas Stan Smith trade dress acquired secondary meaning after adidas used it "exclusively since the early 1970s, expended considerable capital and human resources to promote the shoe, and reaped significant but difficult-to-quantify value from placing the Stan Smith with celebrities, musicians, athletes, and other 'influencers' to drive consumer hype and recognition of the trade dress – which, in 2014, became adidas's top selling shoe of all time with the 40 millionth pair sold." *adidas Am., Inc. v. Sketchers USA, Inc.* 890 F.3d 747, 754 (9th Cir. 2018).

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

Further, to even be minimally probative of secondary meaning evidence of advertisement campaigns need to highlight the claimed trade dress features. *Spark Industries, LLC v. Kretek Intern., Inc.* 2014 WL 4365736 at *13 (C.D.Cal. 2014); *see also*, *Autodesk, Inc*, 685 F. Supp.2d. (explaining, "[n]one of the advertising featured the consistent use of an orange frame in a manner that would support an inference of secondary meaning.").

## ii.  Non-Functionality

The plaintiff bears the burden of proving non-functionality which may be evaluated by the court considering: (1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantages of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Seirus v. Gordini*, 849 F.Supp.2d at 982.

## iii.  Likelihood of Confusion

If the plaintiff can establish trade dress, it still has the burden of proving there is a likelihood of confusion. The test for likelihood of confusion is "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'" *Dreamwerks Prod. Grp. Inc. v. SKG Studio d/b/a Dreamworks  SKG*, 142 F.3d 1127, 1129 (9th Cir. 1998). Confusion is unlikely, and in certain cases eliminated, when the names on the

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

product are easily distinguished even where the appearance of the products are similar. *L.A. Gear, Inc.* 988 F.2d at 1133; s*ee also*, *Reebok International Ltd. v. Alon*, 5 U.S.P.Q.2d 1830, 1831 (C.D.Cal. 1987); *Payless Shoesource Inc. v. Reebok International Ltd.*, 804 F.Supp. 206 25 U.S.P.Q.2d 1130 (D.C.Kan. 1992).

## D. Preemption of State Unfair Competition Claim

Unfair competition claims are preempted by both (i) the Patent Act and (ii) when premised on a trade dress infringement theory. *Deckers. v. Fortune Dynamic,* 2015 WL 12731929 at *7). Specifically, unfair competition claims are preempted by the Patent Act unless the state law claim contains an element that is not shared with the federal law and is qualitatively different from a patent infringement claim. *Id.*; see also, *Deckers Outdoor Corp. v. J.C. Penney Co. Inc.,* 45 F.Supp.3d 1181, 1189 (C.D.Cal. 2014). The Ninth Circuit has also consistently held that unfair competition claims with elements that adopt a trade dress theory are similarly preempted. *Deckers v. Fortune Dynamic,* 2015 WL 12731929 at *7 (quoting, *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (C.D.Cal 2015)). In particular, the Ninth Circuit has found unfair competition claims in violation of *Cal. Bus. & Prof. Code, § 17200* to be "'substantially congruent' to claims made under the Lanham Act. *Id.*

## III. ARGUMENT

### A. The '941 Design Patent is Invalid

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

Deckers alleges patent infringement based on its ownership of U.S. Patent No. D866,941 (the "'941 Design Patent"). Pursuant to applicable law, the '941 Design Patent is claimed though its drawings as follows:



The filing date for the '941 Design Patent application was September 12, 2018 ("Filing Date"). The drawings illustrate the following claims: (i) a sling back slide; (ii) a platform sole; (iii) a wide 4-banded vamp; (iv) an open toe; and (v) an elastic heel strap extending from one side of the vamp to the other. Despite the presumption that the '941 Design Patent is valid, there is unconverted, clear, and convincing prior art evidence, never before cited by Deckers or considered by the United Patent and Trademark Office ("USPTO"), that demonstrably shows the '941 Design Patent to be invalidated because it is not new and/or is obvious. The relevant prior art which renders the '941 Design Patent as obvious includes (i) a Deckers' prior sold

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

*Koolaburra* brand product style as a primary reference; and (ii) several other prior sold third-party sandal products.

     i. <u>Deckers' Prior Sold *Koolaburra* Brand Products Invalidates the '941 Design Patent</u>

As detailed in the accompanying Holden Declaration (at p.6 ¶¶ 7.1-7.4; Exs. 3 & 4), Deckers offered for sale more than 1-year prior to the Filing Date of the '941 Design Patent, through its own subsidiary Koolaburra by UGG, the "Fuzzin Faux Fur II Slide Slipper" which shares the same design characteristics as the '941 Design Patent. The Fuzzin Faux Fur II Slide Slipper ("Koolaburra -Fuzzin Faux II") possesses striking similarities to the '941 Design Patent including, without limitation, the same type of slip sandal with a furry 4-banded vamp, a foot strap, and an elevated platform midsole. Below is a demonstrative side-by-side comparison:

<u>'941 Design Patent</u>                    <u>Koolaburra – Fuzzin Faux II</u>



Not only does the Koolaburra -Fuzzin Faux II serve as prior art, it reveals that Deckers did not disclose this information to the USPTO when it filed its patent application for the '941 Design Patent. Indeed, Deckers failed to turn over in discovery the existence of this product line, despite it clearly being in Deckers'

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

possession, and was discovered only during the expert discovery phase. Deckers actively misled Walmart on the design development of the '941 Design Patent, claiming that it was based upon a Gucci Slide and a prior UGG slipper with bobbles. See Garson Decl. at ¶4, Ex. 1 (30(b)(6) Dep. of Deckers (Bereda) at 66, ll. 2-9). Since Deckers failed to provide the USPTO examiner with its *own* prior product design, any presumption of validity given to the '941 Design Patent should be dramatically reduced in wake of *Accuride Int'l, Inc.* Based on the Koolaburra - Fuzzin Faux II (Deckers' very *own*) prior art alone, the '941 Patent Design should be found invalid and thus unenforceable.

If any visual differences in design exist they are due to commonplace functional choices for footwear. For example, the Koolaburra-Fuzzin Faux II has an exposed rubber portion for the lower midsole that would increase the grip and traction between the shoe and the outside ground. Whereas the '941 Patent depicts a puffy/fluffy midsole which would achieve a softer comfortable fit ideal for indoor wear. However, the differences in such functional elements should not be considered in the analysis for obviousness. *Sport Dimension*, 820 F.3d at 1320. To do so would contravene the very purpose of design patents. Accordingly, the '941 Design Patent should be afforded little to no scope of protection.

ii. Several Other Prior Sold Third-Party Products Invalidate the '941 Design Patent

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

Deckers did not conduct its own prior art search prior to applying for the '941 Design Patent, did not engage a third-party search and has no knowledge whether the applying law-firm ever tasked a prior art search. See Garson Decl. at ¶ 4, Ex. 1 (30(b)(6) Dep. of Deckers (Bereda) at pp. 36-39). It is submitted that such a search would have revealed that in addition to the Koolaburra -Fuzzin Faux II, there are several other prior art references which invalidate the '941 Design Patent, including, (1) the Rasolli-Jahtnna Sandal sold as early as 2014; (2) the Signlinmoo Sandal sold as early as 2010; and (3) the Sonoma Sandal sold as early as April, 2018. As detailed below, all three fluffy/puffy, multi-ribbed vamped sandals were offered for sale before the Filing Date of the '941 Design Patent and share the same overall design characteristics.

    (1)   *The Rasolli- Jahtnna Sandal*

The Rasolli-Jhatnna Sandal was offered for sale as early as April 27, 2014 and is practically identical to the '941 Design Patent. A side-by-side comparison illustrates that before the '941 Design Patent, the Rasolli-Jhatnna Sandal had the same stretch "gore" backstrap and a puffy 4-ribbed vamp. Even the elevated platform midsole of the Rasolli-Jhatnna design closely resembles the overall puffy midsole of the '941 Design Patent. Holden Decl. at ¶7.5.1, Ex. 4. Any visual differences constitute merely obvious modifications to the wedge and midsole combination in the Rasolli-Jhatnna Sandal.

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

<u>'941 Design Patent</u>                    <u>Rasolli-Jahtnna Sandal</u>

    

(2)    *The Signlinmoo Sandal*

The Signlinmoo Sandal as depicted next to the '941 Design Patent below, was offered for sale as early as May 11, 2010 and also portrays very similar design characteristics when compared to the '941 Design Patent. Again, the Signlinmoo Sandal already possessed the same stretch "gore" backstrap and the same fluffy 4-ribbed vamp as claimed in the '941 Design Patent. *Id.* At ¶7.5.2, Ex.4. Further, the Signlinmoo Sandal platform-type midsole would require only minor modifications to achieve the puffy midsole shown in the '941 Design Patent.

<u>'941 Design Patent</u>                    <u>Signlinmoo Sandal</u>

    

(3)    *The Sonoma Sandal*

The Sonoma Sandal is a third example of prior art offered for sale as early as April 9, 2018. The Sonoma Sandal also clearly portrays very similar ornamental design characteristics when compared to the '941 Patent including the same stretch "gore"

**17**

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

backstrap, fluffy multi-ribbed puffs, and a platform type sole. Holden Decl. at ¶7.5.3, Ex. 4.



‘941 Design Patent          Sonoma Sandal

To the extent that the Sonoma Sandal has some slight visual differences when compared to the ‘941 Design Patent, such as the fluffy 3-ribbed puffs as opposed to 4-ribbed puffs, this effectively narrows any resulting scope of coverage that could be found in the ‘941 Design Patent, should it survive this overwhelming invalidity evidence.

In fact, the Rasolli-Jhatnna Sandal, the Signlinmoo Sandal, and the Sonoma Sandal individually and collectively constitute the closest prior art among other relevant examples of prior art. See Holden Decl. at ¶7, Ex. 4. Other sandals, such as the ones depicted in Exhibit 4 to the Holden Declaration, prove that the market was flooded with furry, multi-ribbed vamp, platform sandals years before Deckers filed its application for the ‘941 Design Patent. As such neither the individual components nor the composite whole are novel at all.

**B. The KK Sandal Does Not Infringe the ‘941 Design Patent**

Based on the substantial and highly relevant prior art and should the Court nonetheless conclude that the '941 Design Patent is entitled to some scope of valid coverage, the scope of ornamental design coverage of the '941 Design Patent is extremely narrow, when properly construed as a matter of law. *Sport Dimension,* 820 F.3d at 1320. In view of such limited scope, Defendant contends that the KK Sandal cannot be found to infringe, based on a proper construction of the '941 Design Patent because a comparison with the KK Sandal yields several ornamental design differences. See Holden Decl. at pp. 8-9, ¶8.

      i.  <u>Should the Validity '941 Patent Survive the Prior Art Challenge, it is Extremely Narrow in Scope</u>

As demonstrated by Deckers' own Koolaburra – Fuzzin Faux II and several other prior sold and used third-party sandals the '941 Design Patent is limited only to the precise design shown in its drawings. For example, the Sonoma Sandal utilizes the very same type of flurry 3-ribbed vamp as that used in the KK Sandal. Holden Decl. at ¶8, Ex. 5. In view of such limiting prior art, the scope of the '941 Design Patent cannot, as a matter of law, be extended to cover prior design features such as a furry 3-ribbed vamp. *Sport Dimension*, 820 F.3d at 1320.

      ii.  <u>The KK Sandal Does Not Infringe the '941 Design Patent</u>

A comparison between the proper scope of the '941 Design Patent and the KK Sandal shows that the KK Sandal is non-infringing. *Id.* In accordance with *Payless*

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

*Shoesource, Inc.,* the accused KK Sandal must be compared to the actual drawings (i.e. claims) of the '941 Design Patent. 998 F.2d at 990. A side-by-side comparison between a relevant selection from the '941 Design Patent drawing and the KK Sandal is as follows:



Further, any functional elements must be removed from the analysis. What is left behind is several ornamental design differences such as:

*1.   The Vamp:* As seen in the '941 Patent Design drawing, the 4-ribbed puff vamp is exaggerated and very thick. Alternatively, the KK Sandal has a 3-ribbed stitched down vamp that is flatter and less exaggerated. Holden Decl. at ¶8.1.1.

*2.   The Midsole:* The '941 Patent Design drawing also shows a tall and thick midsole. However, the KK Sandal has a midsole that is significantly thinner and narrower. *Id.* at ¶8.1.2.

*3. The Back-Strap:* The Back-Strap in the '941 Patent Design drawing is thicker and shorter unlike the KK Sandal's strap which is noticeably longer and thinner. *Id.* at ¶8.1.3.

Taking these differences into account, it is clear that the KK Sandal does not infringe the '941 Design Patent.

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

## C. Deckers' Has Failed to Establish Trade Dress in a Single UGG Fluff Yeah Style

At the outset, Deckers' never sought to register any of its several UGG Fluff Yeah product configurations with the USPTO and must now establish unregistered trade dress rights in any single UGG Fluff Yeah Style through a compelling showing of secondary meaning, which it has utterly failed to do at any point in this case.[2] As demonstrated, above in (Section III), a party asserting unregistered trade dress in a product configuration must show (1) that trade dress in a clearly articulated design or combination of elements that has acquired distinctiveness through secondary meaning (2) that the trade dress is nonfunctional; and (3) the accused mark or trade dress creates a likelihood of confusion as to source, or as to sponsorship, affiliation or connection. *Seirus v. Gordini*, 849 F.Supp.2d at 984. Accordingly, Deckers' bears the substantial burden of showing that at least one single style of its UGG Fluff Yeah sandal has acquired the requisite secondary meaning in order to assert protectable trade dress rights against others.

### i. The UGG Fluff Yeah Sandal Has Not Acquired Secondary Meaning

Based on clear evidence presented by Defendant through this motion, the UGG Fluff Yeah Sandal has not acquired secondary meaning and therefore does not possess protectable trade dress. The expert survey executed by Defendant's survey

---

[2] It should be noted that Deckers' prior attempt to register trade dress with the USPTO in U.S. Ser. No. 87/310,138 was rejected. See Garson Decl. at ¶ 5, Ex. 2 (USPTO's 12/22/2017 Final Rejection).

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

expert is alone sufficient to demonstrate that purchasers do not identify the asserted UGG Fluff Yeah Sandal to one source. *See*, *Seirus v. Gordini*, 849 F.Supp.2d at 984. The Neal Declaration establishes that his survey results yielded only a 9.9% net level of secondary meaning. Neal Decl. ¶ 26.1. This result is well under the percentile, which most district courts conclude as insufficient to meet secondary meaning. *See also*, Neal Decl. at pp.11-12, ¶¶26-28.

As detailed in the Holden Declaration (at ¶¶9.1-9.5) Deckers has fallen far short of establishing secondary meaning as to the shape of any of its numerous Fluff Yeah styles, including the style asserted against Defendant. Deckers' has detailed a slipper sandal in Paragraph 20 of the Complaint (Dkt. 1, ¶ 20). However, as explained in the Holden Declaration (at p. 10, ¶¶ 9.4-9.5 and Ex. 6 thereto) Deckers' has sold and marketed a multitude of very different styles of the same slipper combination under the "Fluff Yeah" brand.

Deckers is also unable to establish secondary meaning in view of any circumstantial evidence. The UGG Fluff Yeah trade dress has only been in the market since June 2018, a little over 2 years before Deckers' commenced the instant lawsuit in October 2020. See, Garson Decl. at ¶4, Ex. 1, Deckers 30(b)(6) Dep. (Bereda) at 31, ll. 9-18. This short on sale time frame is consistent with the limited timeframes in which courts have repeatedly found fail to establish a finding of secondary meaning. *EZ Pedo,* 384 F.Supp.3d at 1075.

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

Taking all relevant direct and circumstantial evidence into account it is clear that Deckers' trade dress claim fails and judgment be entered accordingly for Defendant.

### ii. <u>The UGG Fluff Yeah is Functional</u>

If for any reason the Court should find some evidence of secondary meaning to the UGG Fluff Yeah, the UGG Fluff Yeah is still functional in its entirety. As described in Paragraph 20 of the Complaint, all the UGG Fluff Yeah components function to fit securely on the wearer's foot and provide comfort and warmth. It is therefore abundantly clear that the furry components of the UGG Fluff Yeah Sandal, such as the vamp and midsole are functional, as they are designed to provide comfort and warmth to the feet of the wearer. Holden Decl. at ¶6, p.5, ll. 5-8. Since functionality is a legal bar to enforceable trade dress, Deckers' trade dress claim must fail.

### iii. <u>Likelihood of Confusion</u>

Based on the lack of acquired distinctiveness through secondary meaning and non-functionality there is no trade dress in the UGG Fluff Yeah Sandal for Deckers to assert an infringement claim. However, even if the Court could glean the slightest indication of protectable trade dress, any likelihood of confusion with the KK Sandal is effectively eliminated by Defendant's prominent and conspicuous use of the "KENDALL + KYLIE" mark. See Holden Decl. at ¶ 9.3.

23

## D. The Unfair Competition Law Claims are Preempted

Although this Court has repeatedly found in prior decisions that Deckers' state law unfair competition claims are preempted by federal patent and trademark law, Deckers has nonetheless raised the same substantive state law claims in this action. Deckers' unfair competition claims asserted here are similarly preempted by federal law since they are qualitatively the same as Claims I, II, and V asserted in the Complaint. *Deckers v. Fortune Dynamic,* 2015 WL 12731929 at *7. Accordingly, each of Decker's state law claims are preempted and also must be dismissed as a matter of law.

## IV. CONCLUSION

In view of the foregoing, Defendant respectfully requests the Court to grant its motion and enter summary judgment as to all claims in the Complaint in Defendant's favor.

Date: February 22, 2022

**GS2 LAW PLLC**
**By:**     /s/John R. Lane
Robert D. Garson (Pro Hac Vice)
rg@gs2law.com
John R. Lane (Pro Hac Vice)
jl@gs2law.com
20803 Biscayne Blvd. 4th Floor
Aventura, FL 33154
Tel: (305) 780-5212
Fax: (347) 537-4540

**THE LAW OFFICES OF
BENJAMIN TAYLOR**

Benjamin Taylor (SBN 240636)
1880 Century Park East, Suite 714
Los Angeles, CA 90067
Tel: (310) 201-7600
Fax: (310) 201-7601

*Attorneys for Defendant, Walmart, Inc.*

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Defendant Walmart, Inc.'s Notice of Motion and Motion for Summary Judgment, Memorandum of Points and Authorities in Support Thereof and the accompanying Garson, Holden and Neal Declarations with respective exhibits, Statement of Uncontroverted Facts and Conclusions of Law in Support of Defendant's Motion for Summary Judgment and Proposed Order Granting Defendant's Motion for Summary Judgment, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Electronic Service List for this Case.

DATED: February 22, 2022

**GS2 LAW PLLC**

**By:** __/s/John R. Lane_____
Robert D. Garson (Pro Hac Vice)
rg@gs2law.com
John R. Lane (Pro Hac Vice)
jl@gs2law.com
20803 Biscayne Blvd. 4th Floor
Aventura, FL 33154
Tel: (305) 780-5212
Fax: (347) 537-4540

*Attorneys for Defendant, Walmart, Inc.*

## STATEMENT REGARDING CONFERENCE OF COUNSEL
## UNDER L.R. 7-3

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place between January 25-31, 2022. The parties were unable to resolve any of the disputed issues regarding Plaintiff's claims and Defendant's summary judgment positions, resulting in the filing of the present motion.

DATED: February 22, 2022

**GS2 LAW PLLC**

**By:**  /s/ John R. Lane
Robert D. Garson (Pro Hac Vice)
rg@gs2law.com
John R. Lane (Pro Hac Vice)
jl@gs2law.com
20803 Biscayne Blvd. 4th Floor
Aventura, FL 33154
Tel: (305) 780-5212
Fax: (347) 537-4540

**THE LAW OFFICES OF
BENJAMIN TAYLOR**

Benjamin Taylor (SBN 240636)
1880 Century Park East, Suite 714
Los Angeles, CA 90067
Tel: (310) 201-7600
Fax: (310) 201-7601

*Attorneys for Defendant, Walmart, Inc.*

DEFENDANT WALMART, INC.'S MOTION FOR SUMMARY JUDGMENT