|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **CENTRAL DISTRICT OF CALIFORNIA** | |

| | | |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation, | | Case No. 2:20-cv-09521 FLA-E |
| Plaintiffs, | | **DECLARATION OF LENNY M. HOLDEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | | |
| WALMART INC.; and DOES 1-10, inclusive | | **Hon. Fernando L. Aenlle-Rocha** |
| Defendants. | | |

I, Lenny M. Holden hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I submit this Declaration to accompany the Motion for Summary Judgment filed by Defendant, Walmart, Inc. ("Defendant" or "Walmart") in this action. If called upon as a witness, I am able to testify as to all facts, opinions and matters addressed in this Declaration, based upon my professional experience, personal knowledge and/or review of the pertinent materials and information contained in and exhibited to this Declaration.

2. **Background**: I have been involved professionally in the footwear industry for over 40 years, including retail sales, footwear buying, Director of Development and Overseas Operations, Director of Development, Vice President of Footwear Operations. I have worked for larger brands like Converse and LA Gear as well as smaller brands like Airwalk, Pony, and the Sole Technology Inc. house of brands. Since 2011 I have been the proprietor of LMH Footwear Consulting Inc.

focused on development, sourcing, technology development, patent development, and product quality. A substantial portion of my efforts have also been as a footwear expert in multiple types of litigation regarding patents, trademarks, product quality issues, contractual services, and product liability. I have testified at the International Trade Commission as a footwear expert in a trade dress-related matter, *Skechers v. Converse*, and the *Bauer v CCM Hockey* patent case in Canada. My CV is attached for reference as Exhibit 1 hereto.

3. **The Pending Action** – I have been requested to prepare this Declaration in support of Defendant's Motion for Summary Judgment. Based on my review of the Complaint filed by Plaintiff, Deckers Outdoor Corporation ("Plaintiff" or "Deckers") this case relates principally to claims regarding design patent and trade dress infringement. I have also reviewed the Defendant's Answer and Affirmative Defenses submitted in response to the Complaint, which overall and specifically reject all infringement allegations and assert that the design patent-in-suit is invalid and not infringed. Defendant also rejects the existence of any legally enforceable unregistered trade dress rights pertaining to the footwear designs at issue that I have evaluated and analyzed below.

4. **Overview-** In this declaration I will address,

4.1. An overview of the "mule" style of sandal relevant to the particular styles that Deckers is attempting to claim as its exclusive "intellectual property" through this action;

4.2. The relevant prior art that was not submitted by Deckers to the United States Patent & Trademark Office ("USPTO") at the time of filing the Deckers application for the design patent-in-suit, U.S. Patent No. D866,941 ("the '941 Design Patent"; attached as Exhibit 2), or at any time during or after its examination before the USPTO (nor considered by the USPTO examiner during its examination);

4.3. A comparison of that never cited or considered prior art to the drawings (claims) of the '941 Design Patent and how the substance of that prior art impinges, individually and collectively, upon the interpretation and validity of the '941 Design Patent;

4.4. My opinions based on the above comparison as to how and why, the '941 Design Patent is not infringed by the accused Defendant's Kendall & Kylie Sandal ("KK Sandal") and is likely not enforceable due to its invalidity in view of that prior art;

4.5. My analysis and opinions regarding the complete absence of any exclusivity that should be afforded to Deckers, based on concepts of unregistered trademark rights attributable Deckers' UGG-"Fluff Yeah" sandal designs, including in particular any possible scope of trade dress rights relevant to the shape of such a product, against Defendant in this case.

5. **<u>Brief History of the "Mule" Style:</u>** As a professional in the footwear industry one of the most iconic and most easily definable footwear styles is the "mule". Based on my knowledge and further research, mules have a history in footwear dating back to ancient Rome. The style of footwear that Deckers has tried to protect through its '941 Design Patent amounts to no more that a fluffy/furry looking type of classic and well known mule having a back-strap for securing the around the ankle of the wearer. See, eg. Ex. 2, Figs. 1 & 2. However, back-straps

**DECLARATION OF L. HOLDEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

have also been used in other mule and sandal configurations for decades.

5.1. Due to the cyclical nature of the fashion industry, mules have gone in and out of hot fashion quite frequently. Mules were especially popular during the end of the 1990's in the high-fashion world as elite designers put their own touch on the mule. The twenty-first century has at times accepted and rejected the mule trend. Most recently, Elle magazine called mules the shoe of 2017.[1]

5.2. In reviewing recent and distant history of mules, I was continually struck by the question of whether there are any unique features in the '941 Design Patent as well as in the asserted Deckers' Ugg-Fluff Yeah Sandal style (among the many Fluff Yeah styles it currently sells) as the apparent commercial embodiment of the '941 Patent? The answer in my opinion was consistently a resounding: "No".

5.2.1. Are the number or shape of puffs/welts on the vamp unique? – No

5.2.2. Is the heel height or the platform unique? – No

5.2.3. Is a midsole wrapped in fluffy material unique?- No

5.2.4. Is the backstrap unique? – No

5.3. In my opinion, there is nothing unique about the design claimed in the '941 Design Patent or its commercial embodiment represented by only one of the many UGG-Fluff Yeah Sandal styles sold by Deckers.

6. **The '941 Design Patent and the Numerous Examples of Uncited Prior Art:** The '941 Design Patent (Ex. 2) was filed by Deckers on September 12, 2018 (Filing Date), claiming, through 7 drawings (Figs. 1-7) a puffy or fluffy looking mule/sandal design. It is my understanding that since the substance of a U.S. design patent is exclusively limited to the ornamental features of the claimed design depicted in a design patent application, the type of materials or the functional features of the design components form no part of the protectable design

---

[1] See, "A Vintage Barbie Mule is the Shoe to Own This Summer". *Elle.com*. https://www.elle.com/fashion/accessories/tips/g8559/seventeen-best-mules-shoes/

-4-
DECLARATION OF L. HOLDEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

claimed in an ultimately granted and issued design patent.  With respect to the '941 Design Patent specifically, the materials used, which would result in the fluffy or puffy appearance of the sandal design shown, could be achieved through the use real or faux fur or even no fur at all, but instead an insulating synthetic foam or other fur-like or foam material.  In addition, to the extent that such materials had soft and/or insulating properties (such as a fur or synthetic foam), the design shown in the '941 Design Patent would possess non-ornamental, functional features of providing comfort and/or warmth to the feet of the wearer.

    6.1.  In my experience and opinion as a footwear professional, prior used or sold sandals made of any type of material that would achieve the appearance of the design claimed, would be directly relevant to the overall lack of novelty and obviousness of the '941 Design Patent.

    6.2.  After a prior art search was performed by Defendant through it's search agent, it was discovered that there exist several examples of prior art that were in the market and offered for sale well prior to the 9/12/2018 Filing Date of the '941 Design Patent.  I have been provided and have closely reviewed the results of this search performed by Government Liaison Services ("GLS Search") dated 1/26/2022 (attached as Exhibit 3 and 3-1 hereto).

    6.3.  The GLS Search yielded several examples of prior sold and published sandal designs closely resembling the design shown in the '941 Design Patent, which I have compared to the '941 Design Patent and analyzed in attached Exhibit 4 hereto and discuss below.

7. **The Invalidating Prior Sold and Published Prior Art Designs-** Most notably, the search results include a Deckers-Koolaburra brand sandal ("Koolaburra-Fuzzin Faux II Sandal"- shown in attached Exhibit 4, p.2, 1st image), that is strikingly similar to the design claimed in the '941 Design Patent.  Based on my review and understanding of the GLS Search results, the Koolaburra-Fuzzin Faux II Sandal

was previously sold and publicly available many years before the Filing Date of the '941 Design Patent and shows a strikingly similar overall design when compared to the '941 Design Patent. Ex. 4, p. 2, 1st image. Most notably it represents the same type of slip sandal having a fluffy 4-ribbed vamp, a foot strap and an elevated platform midsole. This design alone in my opinion nullifies any novelty in the '941 Design Patent and certainly renders it obvious to a person of ordinary skill in the art, when considered together with the several other third party prior art products also found and discussed below.

**7.1.** It is my understanding from one of the GLS Search results that Deckers' own Koolaburra-Fuzzin Faux Fur brand sandals, were marketed and sold online through Nordstrom as early as December 4, 2017. See Ex. 3 at p. 5. Further, I also understand that a follow-up search result shows that the Fuzzin Faux Fur II design was publicly available and offered for sale as early as 2014 and possibly as early as 2000. See Exhibit 3-1 to the GLS Search attached hereto.

**7.2.** In my professional experience, it is also my considered view that this product was very likely available in the marketplace much earlier than December 2017, due to the lead time necessary for Decker's manufacturer to produce and then for Deckers to have such products ordered, received and then shipped to its various retailers for sale to consumers. The likely lead-time between manufacture and ultimate retail sale in my experience would be anywhere from 8 to 10 months.

**7.3.** This evidence is very telling in addition to the fact that it is my understanding that Deckers failed to even perform a single prior art search before filing or during examination of the application for the '941 Design Patent asserted against Defendant.

**7.4.** All of these facts reinforce the conclusion that the '941 Design Patent lacks validity and was filed and enforced only to protect a "Best Seller" product, not to reflect any scope of unique or exclusive design created by Deckers.

-6-
**DECLARATION OF L. HOLDEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**7.5. The Other Third Party Prior Art Designs**- The additional third party prior products found in the GLS Search, and my comparison of these examples shown in Exhibit 4 hereto, predate the filing of the '941 Design Patent by many years and also possess the same overall design and principal elements as the ornamental design shown in the '941 Design Patent.

**7.5.1.** First, the **Rasolli-Jhatna** sandal publicly sold/published as early as April 2014, more than 4 years before the Filing Date of the '941 Design Patent, also has a very similar fluffy 4-ribbed vamp, high platform and backstrap when compared to the drawings of the '941 Design Patent. Again any variations represent merely commonplace and obvious design differences for this type of fluffy looking sandal. See, Ex. 4, p.2, 2nd Image.

**7.5.2.** The next prior art item in Exhibit 4, the **Signlinmoo Slipper,** which was on sale as early as 2010, also has ornamental features similar to the drawings of the '941 Design Patent, including again a fluffy 4-ribbed vamp, platform-type midsole and backstrap. See Ex. 4, p. 3, 1st image.

**7.5.3.** Additional prior art products found, which pre-date the '941 Design Patent also have fluffy 3-ribbed vamps similar to the 3-ribbed vamp used on the accused KK Sandal. See the **Sonoma Goods for Life-Faux Fur,** sandal (Ex. 4, p.3, 2nd image). It follows from this prior art that that the scope of the ornamental design shown in the '941 Design Patent, under no circumstances could be expanded to include a sandal such as the KK Sandal having a furry 3-ribbed vamp, as further detailed in the non-infringement discussion below.

8. **The '941 Design Patent Does Not Cover the KK Sandal Design-** Should some scope of validity be found to exist in the '941 Design Patent, which I strongly believe should not, it can only result under the narrowest of design features (i.e. the precise design shown in the patent drawings or claims) but no broader and therefore very limited in scope. Based on the existence of the above prior art, the scope of the ornamental design shown in the '941 Design Patent cannot be extended to include a sandal such as the KK Sandal having a furry 3-ribbed vamp.

   8.1. I have also conducted a detailed comparison of the '941 Design Patent and the KK Sandal and have found, based on the '941 Patent's very narrow scope, many ornamental design differences as shown in Exhibit 5 hereto and as follows:

      8.1.1. The Vamp-

- The 4-ribbed puffy looking vamp from the '941 Design Patent is quite a bit exaggerated and very thick;
- The KK Sandal 3-ribbed stitched down vamp is much more flat and less exaggerated.

      8.1.2. The Midsole-

- The '941 Patent midsole is tall and thick;
- The KK Sandal midsole is markedly thinner and narrower.

      8.1.3. The Back-strap-

- The '941 Patent strap is thicker and shorter;
- The KK Sandal's strap is noticeably longer and thinner.

   8.2. In conclusion with respect to the overall elements of the '941 Design Patent, the KK Sandal differs from the '941 Design Patent in significant ways, enough

so that the comparison (in Ex. 5) shows a significant divergence from the '941 Design Patent and from the main elements of the overall design itself.

9. **The Absence of Deckers' Unregistered Trade Dress Rights**- With respect to unregistered trade dress rights, pertaining to a product configuration, in this case the shape of a fluffy/puffy mule, it is my understanding that any scope of enforceable trade dress rights must necessarily be substantiated by the very high bar of acquired distinctiveness or "secondary meaning". Based on my professional knowledge and experience such rights are only rarely substantiated in the footwear industry, are almost always non-existent and then recognized only in limited, narrow instances when a style or brand logo reaches an iconic stature in the industry.

   9.1. The latter instance occurs only after several decades of successful marketing and sales, such as the Vans checkerboard pattern upper for their oxford styles, and the Converse Chuck Taylor circular star patch. In these cases, the covered trade dress usually relates to a particular design or logo used on the footwear product.

   9.2. The UGG Fluff Yeah Sandal is not such a product and in contrast attempts to claim trade dress based on the shape of the footwear itself through the highly specious argument that a mere "fluffy" or "puffy" profile of commonplace slipper components rises to the level of enforceable, unregistered trade dress rights.

   9.3. If Deckers is arguing that, since the issuance of the '941 Design Patent in 2019, the UGG Fluff Yeah Sandal design has reached iconic stature, It is my very strong professional opinion that this design has been commonplace for many decades and that the addition of the UGG logo alone does not lead to the conclusion that this product has reached an iconic milestone and is certainly not worthy of exclusive trade dress protection. The Defendant's Kendal and

**DECLARATION OF L. HOLDEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Kylie logo on a like style sandal should arguably have as much or more fashion credibility than any other brand in the marketplace. Especially in the case of a "hot" at the moment style.

9.4. Notably, Deckers' trade dress claim falls flat at the outset in light of the indisputable existence of the numerous design and style variations of other UGG Fluff Yeah branded sandals that Deckers has and currently continues to market and sell to consumers. In contrast to the UGG Fluff Yeah Sandal asserted in this case, there exist on the market a large number of different UGG Fluff Yeah styles that use the same general configuration, wedge, slide in forefoot upper, and back-strap and are all sold under the UGG brand and Fluff Yeah "style". This undeniable fact tends to seriously dilute any singular, look, shape or design that could be associated with the asserted UGG Fluff Yeah Sandal by consumers.

9.5. I have compared the so-called "trade dress" elements of the UGG Fluff Yeah Sandal asserted by Deckers in the Complaint (items (a) through (f) in ¶ 20 of the Complaint) to the various other UGG Fluff Yeah styles. See attached Exhibit 6. The other UGG Fluff Yeah styles shown in Exhibit 6 each have several significant visual and ornamental design differences in contrast to the single UGG Fluff Yeah Sandal design being asserted against the KK Sandal in the present case. This simple comparison alone clearly demonstrates that the asserted UGG Fluff Yeah Sandal is not unique and thus could not possess valid trade dress rights under any circumstances.

I declare under penalties of perjury pursuant to the laws of the United States that the foregoing is true and correct.

Executed this __21__ day of February 2022 in Los Angeles, California.

*Lenny M. Holden*