1  Brent H. Blakely (SBN 157292)
   bblakely@blakelylawgroup.com
2  Jamie Fountain (SBN 316567)
   jfountain@blakelylawgroup.com
3  BLAKELY LAW GROUP
   1334 Parkview Avenue, Suite 280
4  Manhattan Beach, California 90266
   Telephone: (310) 546-7400
5  Facsimile: (310) 546-7401

6  ***Attorneys for Plaintiff***
   ***Deckers Outdoor Corporation***
7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10

11 DECKERS OUTDOOR                    ) CASE NO. 2:20-cv-09521-FLA (Ex)
   CORPORATION, a Delaware            )
12 Corporation,                       ) **DECKERS' OPPOSITION TO**
                                      ) **DEFENDANT'S MOTION FOR**
13              Plaintiff,            ) **SUMMARY JUDGMENT**
                                      )
14        v.                          ) Hearing
                                      )
15 WALMART INC., and DOES 1-10,       ) Date:   April 1, 2022
   inclusive                         ) Time:   1:30 P.M.
16                                    ) Ctrm.:  6B
                Defendants.           )
17                                    ) Complaint Filed:        10/16/2020
                                      ) Motion Hearing Cut-Off: 04/01/2022
18                                    ) Pre-Trial Conference:   05/13/2022
                                      ) Trial Date:             05/24/2022
19                                    )
20                                    )   **Hon. Fernando L. Aenlle-Rocha**
                                      )
21                                    )
                                      )
22                                    )
                                      )
23                                    )

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................1

II.  BACKGROUND ................................................................3

A.  FACTUAL BACKGROUND.............................................3

   B.  Procedural Background ................................................5

III.  ARGUMENT....................................................................6

   A.  Plaintiff Should Prevail on its Patent Claim...................6

   1.  The 941 Patent is Not Obvious and is Valid .................6

            a.  Defendant Failed to Plead Obviousness as an
                Affirmative Defense ....................................7

            b.  Defendant's Purported Evidence of Prior Art was
                First Disclosed After the Discovery Deadline and
                Therefore Barred by FRCP 37 .................................9

            c.  All of Walmart's Purported Prior Art is
                Inadmissible ..............................................10

            d.  Walmart Failed to Analyze Obviousness...................12

      2.  Walmart Infringed Upon the '941 Patent............................14

   B.  Plaintiff Should Prevail on its Trade Dress Claim .........................15

      1.  The UGG Fluff Yeah Sandal Has Acquired Secondary
          Meaning...........................................................16

      2.  Defendant's Functionality Argument is Meritless...............17

      3.  Defendant's Deliberate Copying of the Fluff Yeah Trade
          Dress is Likely to Cause Consumer Confusion ...................19

      4.  Deckers' State Law Claims for Trade Dress Infringement
          are Not Preempted................................................25

IV.  CONCLUSION................................................................25

i

# **TABLE OF AUTHORITIES**

## CASES

*Adidas-Salomon Ag v. Walmart Corp.*,
   228 F. Supp. 2d 1192 (D. Or. 2002) .................................................. 16

*Advanced Cardiovascular Sys. v. Medtronic, Inc.*,
   1996 U.S. Dist. LEXIS 11700 (N.D. Cal. July 24, 2006) ..................... 8

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   68 F. Supp. 3d 1170 (C.D. Cal. 2014) ............................................... 21

*Apple Inc. v. Samsung Elecs. Co.*,
   786 F.3d 983 (Fed. Cir. 2015) .......................................................... 10

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   839 F.3d 1034 (Fed. Cir. 2016) ........................................................... 7

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
   678 F.3d 1314 (Fed. Cir. 2012) ........................................................... 7

*Art Attacks Ink, LLC v. MGA Entm't Inc.*,
   581 F.3d 1138 (9th Cir. 2009) ..................................................... 16, 22

*Asetek Danmark A/S v. CMI United States, Inc.*,
   100 F. Supp. 3d 871 (N.D. Cal. 2015) ............................................... 14

*Audio Fidelity Inc. v. High Fidelity Recordings, Inc.*,
   283 F.2d 551 (9th Cir. 1960) ....................................................... 17, 25

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
   58 F.3d 849 (2nd Cir. 1995) .............................................................. 22

*BlackBerry Ltd. v. Typo Prods. LLC*,
   2014 U.S. Dist. LEXIS 42702 (N.D. Cal. Mar. 28, 2014) ..................... 7

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
   963 F.3d 859 (9th Cir. 2020) ..................................................... 18, 19

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
   2007 U.S. Dist. LEXIS 11370 (D. Del. Feb. 15, 2007) ....................... 10

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999) .......................................................... 25

*Burberry Ltd. v. Salim*,
   2013 WL 12146120 (C.D. Cal. July 12, 2013) ................................... 21

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002) ........................................................... 7

*Century 21 Real Estate Corp. v. Sandlin*,
   846 F.2d 1175 (9th Cir. 1988) .......................................................... 20

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
   870 F.2d 512, 517 (9th Cir), cert denied, 493 U.S. 872 (1989) ......................... 16

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
   251 F.3d 1252 (9th Cir. 2001) ............................................................. 15, 16, 23

*Crocs, Inc. v. ITC*,
   598 F.3d 1294 (Fed. Cir. 2010) ........................................................................ 14

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
   2009 WL 3517617 (N.D. Cal. Oct. 26, 2009) ..................................................... 8

*Deckers v. Romeo*,
   2017 U.S. Dist. LEXIS 217136 (C.D. Cal. Oct. 6, 2017) ................. 2, 11, 12, 13

*Dion v. Fulton Friedman & Gullace LLP*,
   2012 WL 160221 (N.D. Cal. Jan. 17, 2012) ....................................................... 8

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ......................................................................... 20

*Eli Lilly & Co. v. Barr Labs., Inc.*,
   251 F.3d 955 (Fed. Cir. 2001) ........................................................................... 8

*Faberge, Inc. v. Saxony Products, Inc.*,
   605 F.2d 426 (9th Cir. 1979) ........................................................................... 17

*Finnigan Corp. v. Int'l Trade Comm'n*,
   180 F.3d 1354 (Fed. Cir. 1999) ......................................................................... 8

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) ........................................................................... 21

*Gorham Mfg. Co. v. White*,
   81 U.S. 511 (1871) ........................................................................................... 14

*Guess?, Inc. v. Tres Hermanos*,
   993 F. Supp. 1277 (C.D. Cal. 1997) ................................................................ 24

*HRL Associates, Inc. v. Weiss Associates, Inc.*,
   1989 TTAB LEXIS 33, aff'd 902 F.2d 1546 (Fed. Cir. 1990) ......................... 22

*In re Harvey*,
   12 F.3d 1061 (Fed. Cir. 1993) ................................................................... 12, 13

*In re Kao*,
   639 F.3d 1057 (Fed. Cir. 2011) ......................................................................... 7

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008) ....................................................................... 13

*Int'l Star Class Yacht Racing Ass'n v. Hilfiger*,
   80 F.3d 749 (2nd Cir. 1996) ............................................................................ 21

*Jack Schwartz Shoes v. Skechers U.S.A.*,
   2002 U.S. Dist. LEXIS 25699 (S.D.N.Y. Sep. 9, 2002) ..................................... 7

*Kandypens, Inc. v. Puff Corp.*,
    2020 U.S. Dist. LEXIS 259022 (CDCAL Sept. 20, 2020) ................................ 8

*K-Swiss, Inc. v. USA Aisiqi Shoes, Inc.*,
    291 F. Supp. 2d 1116 (C.D. Cal. 2003) ............................................................. 24

*Levi Strauss v. Bluebell, Inc.*,
    632 F.2d 817 (9th Cir. 1980) ............................................................................. 19

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
    799 F.2d 867 (2d Cir. 1986)............................................................................... 25

*Macy's Inc. v. Strategic Marks, LLC*,
    2016 WL 374147 (N.D. Cal. Feb. 1, 2016) ....................................................... 24

*Mahurkar v. C.R. Bard, Inc.*,
    79 F.3d 1572 (Fed. Cir. 1996) ........................................................................... 10

*Man Mach. Interface Techs., LLC v. Vizio, Inc.*,
    2012 U.S. Dist. LEXIS 200329 (C.D. Cal. Feb. 27, 2012) ............................... 10

*Mattel, Inc. v. Walking Mountain Prods.*,
    353 F.3d 792 (9th Cir. 2003) ............................................................................. 22

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)................................................................................................ 6

*Miller v. Ghirardelli Chocolate Co.*,
    2013 WL 3153388 (N.D. Cal. June 19, 2013)...................................................... 8

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
    230 F. Supp. 3d 1161 (C.D. Cal. 2017) ....................................................... 20, 23

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
    804 F.3d 930 (9th Cir. 2015) ............................................................................. 19

*Multicraft Imps. v. Mariposa United States*,
    2018 U.S. Dist. LEXIS 245368 (C.D. Cal. Jan. 19, 2018) ............................... 20

*Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ......................................................................... 12

*NEXxUS Products Co. v. Gentle Concepts, Inc.*,
    1993 WL 496824 (M.D. Fla. Apr. 30, 1993)...................................................... 21

*Nike, Inc. v. Adidas AG*,
    812 F.3d 1326 (Fed. Cir. 2016) ........................................................................... 7

*OddzOn Prods. v. Just Toys*,
    122 F.3d 1396 (Fed. Cir. 1997) ......................................................................... 14

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) ............................................................................... 20

*Orr v. Bank of Am.*,
    285 F. 3d 764 (9th Cir. 2002) ............................................................................ 11

iv

*Playboy Enterprises Inc. v. Hsin I. Chen*,
    1997 WL 829339 (C.D. Cal. Oct. 1, 1997)...................................................21, 24

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) .............................................................................. 25

*Roland Corp. v. Inmusicbrands, Inc.*,
    2017 U.S. Dist. LEXIS 17571 (N.D. Cal. Feb. 14, 2022) .................................. 8

*Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS
    156373 (C.D. Cal. Oct. 31, 2012).......................................................6, 11, 13, 14

*Telebrands Corp. v. HM Imp. USA Corp.*,
    2012 WL 3930405 (E.D.N.Y. July 26, 2012).................................................... 22

*Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*,
    2008 U.S. Dist. LEXIS 103179 (N.D. Iowa Dec. 19, 2008) ........................... 10

*Vision Sports, Inc. v. Melville Corp.*,
    888 F.2d 609 (9th Cir. 1989)................................................................................ 19

## STATUTES

35 U.S.C. § 282(a)......................................................................................................... 6

35 U.S.C. 102(b) ......................................................................................................... 11

## RULES

Fed.R.Civ.P 8(c) ........................................................................................................... 8

FRCP 26(1)(A)(ii) ........................................................................................................ 9

FRCP 26(e)(1)(A) ........................................................................................................ 9

FRCP 37(c)(1) .............................................................................................................. 9

**DECKERS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.    <u>INTRODUCTION</u>

Deckers Outdoor Corporation ("Plaintiff" or "Deckers"), one of the most respected footwear companies in the United States, commenced this action shortly after learning that Walmart, Inc. ("Defendant" or "Walmart") was once again selling low-quality knockoffs of Deckers' iconic footwear. Although Deckers has sued Walmart twice before for selling knockoffs of its famous UGG® footwear, Walmart continues to infringe on Decker's popular designs. It was also selling a "dupe" of another beloved Deckers' product, the UGG Fluff Yeah Slide, which is protected by the UGG Fluff Yeah Trade Dress and its federally registered design patent on the Fluff Yeah Slide (D866,941 Patent ("'941 Patent")):

  

UGG® Fluff Yeah Slide          Accused Product                '941 Patent

If these products look similar, that is because Walmart intended them to be. As evidenced by communications between Walmart and its' footwear suppliers, Walmart set out to deliberately copy the incredibly successful UGG® Fluff Yeah Slide.



1    Exacerbating the willful nature of Walmart's conduct is the fact the deliberate

2    copying of well-known brands and products is not an exception, but rather the norm at

3    the world's largest retailer.  Even though Walmart has been sued hundreds of times for

4    infringement, Walmart takes no real measures to prevent this illegal conduct. Indeed,

5    Walmart continued to sell the Accused Product into 2022 despite being sued by

6    Deckers in October 2020, demonstrating a complete disregard for Deckers' rights.

7    Walmart's arguments for summary judgment fall apart faster than its' footwear.

8    Walmart's challenge to the '941 Patent is based on an affirmative defense not alleged

9    in its' Answer - obviousness. Indeed, the first time Walmart mentioned obviousness in

10   this case was in its Motion for Summary Judgment. Furthermore, Walmart's

11   obviousness defense is premised entirely on a series of website screenshots depicting

12   what Walmart purports to be "prior art", and which Walmart produced for the first-

13   time weeks after the fact discovery cut-off. Not only is this purported "prior-art"

14   barred by FRCP 37, but it is also well-established that the screenshots are inadmissible

15   because they are unauthenticated hearsay.  See e.g., *Deckers v. Romeo & Juliette*, 2017

16   U.S. Dist. LEXIS 91711 **6-15 (June 13, 2017).  Underscoring the unreliability of

17   these screenshots is Walmart's reliance on the Koolaburra® Fuzz'n Faux II, the

18   centerpiece of Walmart's prior art argument, which is a sandal made by Deckers and

19   first offered for sale two years <u>after</u> the '941 Patent was filed.  Not prior art.

20   Walmart's trade dress arguments are equally frivolous.  Deckers' UGG® Fluff

21   Yeah Slide is an incredible success story.  In the past three years Deckers has sold over

22   ████████ Fluff Yeah Slides (roughly to 9% of the total slippers sold in the U.S.),

23   generating over ████████ in revenue.  They have been seen on numerous

24   celebrities and received an amazing amount of media attention.  Like several other

25   unscrupulous poachers who have attempted to knock-off the UGG Fluff Yeah Slide,

26   Walmart deliberately copied this "hot" design to siphon off the enormous amount of

27   goodwill the Fluff Yeah has generated in the marketplace. Not only should Walmart's

28   Motion be denied, but Summary Judgment should be granted in favor of Deckers.

## II.    BACKGROUND

### A.    Factual Background

Deckers is one of the biggest footwear companies in the United States with an impressive portfolio of brands including the iconic UGG® brand - one of the most well-recognized premium comfort-leisure footwear brands in the U.S. and world-wide. Statement of Additional Facts ("SAF") 19-20. In addition, Deckers owns numerous design patents to the various styles of footwear it offers under its brands, including the UGG® brand. One such design patent is at issue in this case – D866,941 (the "'941 Patent") issued on November 19, 2019. SAF 22-25.

Since its founding in 1979, the UGG® brand has come to symbolize a bold free-spirited expression of style. SAF 26.  In gaining prominence, the UGG® brand became synonymous with the UGG® classic boot. SAF 29. However, over the last several years, the UGG® brand has taken strides to reposition itself from a seasonal footwear brand to a lifestyle brand. SAF 28.

Integral to the UGG® brand repositioning is the UGG® Fluff Yeah Slide – the embodiment of the '941 Patent and the Fluff Yeah Trade Dress. SAF 30,32. Launched in 2018, the UGG® Fluff Yeah Slide was designed as a more "fashion-ized" slipper that leveraged the UGG® brand elements including heritage, sheepskin, as well as its design philosophy of being "extra" and "bold," a fixture of UGG® brand products since the beginning. SAF 31-35. It was also designed to be "fun" and "bring joy" to those who wear it. Id.

Since its launch Deckers has spent over ▇▇▇▇▇▇ on advertising and marketing associated with the UGG® Fluff Yeah Slide. SAF 36. As a result, the UGG® Fluff Yeah Slide rapidly became a best-selling product receiving extensive and favorable media coverage online, including features in *BuzzFeed*, *Life & Style*, *US Weekly* and *ET*. SAF 37-38. The broad popularity of a product so different from others that were available in the marketplace, including products then-offered by UGG®, resulted in the rapid gain of popularity the UGG® Fluff Yeah Slide has enjoyed with

younger consumers and celebrities, alike, such as Kylie Jenner of the Kendall + Kylie® brand, Megan Fox, Gigi Hadid, Hailey Bieber, and Cardi B. SAF 39.

The UGG® Fluff Yeah Slide's popularity is further reflected by the sheer volume of sales - over ███████ in total sales revenue in just 3.5 years! SAF 40. During this time frame Deckers sold over ██████ units, which amounted to roughly 9% of the total slipper sales in the Unites States, and 22% of the total sale of slippers over $75.00.  SAF 40, 89.  The UGG® Fluff Yeah Slide has received so much attention that it prompted Deckers' own Koolabura® (a member of the UGG® brand family) to launch its own product, the Koolaburra by UGG® Fuzz'n – in January 2020 (renamed after its initial season to the Koolaburra® Fuzz'n II). SAF 53.

As with all the popular UGG® brand styles, the UGG® Fluff Yeah Slide quickly became the target of third-party knockoffs. SAF 51. Deckers has a long history of aggressively enforcing its intellectual property rights and has taken the same approach to protecting its rights in the '941 Patent and Fluff Yeah Trade Dress – both of which are embodied by the UGG® Fluff Yeah Slide. Since the launch of the UGG® Fluff Yeah Slide Deckers has filed more than a dozen lawsuits enforcing its rights in the '941 Patent and Fluff Yeah Trade Dress. SAF 53.

Walmart, on the other hand, is a massive, big box retailer that sells a wide selection of products and services including apparel and footwear online at www.walmart.com and through numerous "brick-and-mortar" retail stores across the United States. SAF 54. Walmart's products range from discount deals to lower-priced diffusion lines of mid-market brands to premium brands such as UGG®. SAF 55.

Walmart is no stranger to litigation; having been sued for intellectual property infringement over 200 times in the past ten years, including twice by Deckers for infringing its rights in the UGG® Bailey Button Boot. SAF 56,57. Indeed, Walmart's business model appears to be based on identifying which fashion trends are "hot", having its manufacturers make copies of these "hot" items, and selling these "hot" items at a lower price point. SAF 58.

Now, despite selling authentic UGG® Fluff Yeah Slides on Walmart's website, Walmart has once again copied another popular UGG® brand product – this time the UGG® Fluff Yeah Slide. SAF 59. Walmart's Kendall + Kylie Shani Slipper (the "Accused Product") is an undeniable look-a-like of the UGG® Fluff Yeah Slide. Indeed, emails starting in January 2020 between Walmart and Pajar Distribution LTEE ("Pajar"), the manufacturer of the Accused Products, show Walmart intentionally and specifically requested "branded Kendall + Kylie slippers" that look just like the UGG® Fluff Yeah Slide, and intentionally designed the Accused Product to replicate the specific trade-dress elements of the UGG® Fluff Yeah Slide. SAF 66-68.  Walmart's efforts resulted in a similarly confusing product. SAF 72.

Walmart began selling the Accused Product on August 29, 2020. SAF 60-61. Despite being sued on October 16, 2020, Walmart continued to sell the Accused Products into 2022, despite having been engaged in this current action. SAF 72.

### B.    Procedural Background

On October 16, 2020, Plaintiff filed this instant action against Defendant for infringement of its Fluff Yeah Trade Dress and '941 Patent. ECF No. 1. On January 25, 2021, Defendant filed its Answer. ECF No. 20. Notably, Defendant failed to plead an affirmative defense for patent invalidity due to obviousness. ECF No. 20.  On May 25, 2021, this Court issued its Scheduling Order setting, among other deadlines, January 14, 2022 as the deadline to complete fact discovery.  ECF No. 29.

In May 2021, Plaintiff served Defendant with narrowly tailored discovery requests regarding issues such as Plaintiff's claims alleged in the Complaint, and Defendant's affirmative defenses. Due to Defendant's failure to provide full and complete responses and produce *any* documents in response to discovery, Plaintiff sought, and obtained, an order from this Court compelling Walmart to provide amended discovery responses and produce documents no later than December 7, 2022. ECF No. 44.  On January 14, 2022, at 5:02 PM, the discovery deadline, Defendant produced documents which should have been produced on December 7, 2021, pursuant

to this Court's Order granting Plaintiff's Motion to Compel.  On January 30, 2022 – over two-weeks *after* the close of fact discovery – Defendant served Plaintiff with additional documents, including, for the first time, screenshots of purported prior art. SAF 81.

On February 11, 2022, the parties exchanged initial expert reports.  Walmart's proffered expert Lenny Holden, a footwear developer, made no mention of obviousness, or any other affirmative defense for that matter, in either his initial or rebuttal reports. SAF 82-83.

On February 22, 2022, Walmart filed this present Motion for Summary Judgment.  ECF No. 54.  Shortly thereafter, Deckers filed an *ex parte* application to strike this Motion due to Walmart's failure to comply with Local Rule 7-3 and this Court's Standing Order.  ECF No. 55.  This Court denied Deckers' application. ECF No. 57.

## III.  ARGUMENT

### A.    Plaintiff Should Prevail on its Patent Claim

#### 1.    The 941 Patent is Not Obvious and is Valid

Design patents are presumed to be valid. 35 U.S.C. § 282(a).  "Invalidity must be proven by *clear and convincing* evidence."  *Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 156373, at *14 (C.D. Cal. Oct. 31, 2012) citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011).

A patent may be found invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C.S. § 103. "In addressing a claim of obviousness in a design patent, the ultimate inquiry is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).  This involves a two-step process:

"First, one must find a single reference, a something in existence, the **design characteristics of which are basically the same as the claimed design**. Second, other references may be used to modify the primary reference to create a design that has the same overall visual appearance as the claimed design. However, the secondary references may only be used to modify the primary reference if they are so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other."

*Id.* 1329-30 (emphasis) cited by *BlackBerry Ltd. v. Typo Prods. LLC*, 2014 U.S. Dist. LEXIS 42702, at *17 (N.D. Cal. Mar. 28, 2014).

"The mere fact that each of the elements of a patented design existed in the prior art does not demonstrate that the particular combination of the elements would have been obvious to a designer of ordinary skill in the field, absent some teaching that would suggest combining the elements." *Jack Schwartz Shoes v. Skechers U.S.A.*, 2002 U.S. Dist. LEXIS 25699, at *17 (S.D.N.Y. Sep. 9, 2002) (finding that none of the asserted references suggested a combination of the elements of the asserted patent) citing *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1288 (Fed. Cir. 2002) (design not obvious even though it could be arrived at by combining elements of four prior art lamps); *Avia*, 853 F.2d at 1564 ("That some components of [Plaintiff's] designs exist in the prior art is not determinative.")

Secondary considerations, or "objective indicia of non-obviousness," such as "commercial success enjoyed by devices practicing the patented invention, industry praise for the patented invention, copying by others, and the existence of a long-felt but unsatisfied need for the invention," must be considered in the obviousness analysis. See *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016); *Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1335 (Fed. Cir. 2016).  In fact, "when secondary considerations are present . . . it is error not to consider them." *Nike, Inc. v. Adidas AG*, 812 F.3d at 1339 citing *In re Kao*, 639 F.3d 1057, 1067 (Fed. Cir. 2011).

a.    ***Defendant Failed to Plead Obviousness as an Affirmative Defense***

FRCP 8(c) requires that a party "affirmatively state any avoidance or affirmative defense" in the responsive pleading. Under the *Twombly* and *Iqbal* standard, "the simple listing of a series of conclusory statements asserting the existence of an affirmative defense without stating a reason why that affirmative defense might exist is not sufficient." *Miller v. Ghirardelli Chocolate Co.*, 2013 WL 3153388 *3 (N.D. Cal. June 19, 2013). This heightened standard "serves to weed out the boilerplate listing of affirmative defenses which is commonplace in most defendant's pleadings." *Id*.

After *Iqbal*, "the burden is on the defendant to proffer sufficient facts and law to support an affirmative defense, and not on the plaintiff to gamble on interpreting an insufficient defense in the manner defendant intended." *CTF Dev., Inc. v. Penta Hospitality, LLC*, 2009 WL 3517617, at *7–8 (N.D. Cal. Oct. 26, 2009). "Just as a plaintiff's complaint must allege enough supporting facts to nudge a legal claim across the line separating plausibility from mere possibility, a defendant's pleading of affirmative defenses must put a plaintiff on notice of the underlying factual bases of the defense." *Dion v. Fulton Friedman & Gullace LLP*, 2012 WL 160221*2 (N.D. Cal. Jan. 17, 2012).

Patent invalidity contentions require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. *Kandypens, Inc. v. Puff Corp.*, 2020 U.S. Dist. LEXIS 259022 *5 (CDCAL Sept. 20, 2020) Patent invalidity for reasons such as obviousness must be plead as an affirmative defense. *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001); see also, *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1365 (Fed. Cir. 1999); *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 1996 U.S. Dist. LEXIS 11700 **9-10 (N.D. Cal. July 24, 2006); *Roland Corp. v. Inmusicbrands, Inc.*, 2017 U.S. Dist. LEXIS 17571 (N.D. Cal. Feb. 14, 2022).

Defendant did not plead patent invalidity for obviousness as an affirmative defense (or otherwise) in its Answer. ECF No. 20. Defendant's failure to allege obviousness precludes it from raising this affirmative defense, in the first instance, in

its Motion for Summary Judgment. See *Advanced Cardiovascular Sys. v. Medtronic, Inc.*, 1996 U.S. Dist. LEXIS 11700 **9-10 (N.D. Cal. July 24, 2006) (Striking defendant's affirmative defense that the patent "'is invalid, void, and unenforceable for failure to satisfy the requirements of patentability […]'" on the grounds that it was not pled with the minimal specificity necessary to give the plaintiff fair notice of the defense).

### b.    Defendant's Purported Evidence of Prior Art was First Disclosed After the Discovery Deadline and Therefore Barred by FRCP 37

Under FRCP 26(1)(A)(ii), Walmart was required to provide "a copy—or a description by category and location—of all documents … may use to support its claims or defenses..." Walmart was also required to supplement its initial disclosures — "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect…" FRCP 26(e)(1)(A). The purpose of Rule 26 disclosures is to enable the opposing party to plan its discovery, including depositions based on disclosures. *Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 2181200 *2-3 (N.D. Cal. June 3, 2011). Deckers was not afforded this opportunity with regarding the Walmart's purported prior art references.

Defendant's prior art references were never disclosed in its' initial disclosures or any supplemental disclosures. SAF 75-79. Nor were they identified in Defendant's interrogatory responses or document production during fact discovery. SAF 80.

Rule 37(c) of the Federal Rules of Civil Procedure prohibits Walmart from smuggling purported prior art references into this case after the discover deadline - unless it can prove that the failure [to disclose or supplement] was substantially justified or is harmless. FRCP 37(c)(1). Walmart cannot carry this burden.  The parties were well past the January 14, 2022 fact discovery deadline when Walmart belatedly produced its prior art documents for the first time on January 30, 2022. SAF 81. The untimely disclosure of these documents prevented Deckers from obtaining any fact discovery regarding Walmart's purported prior art references.  The prejudice to

1  Deckers is compounded by the fact that Walmart's purported evidence of "prior art" is

2  nothing more than a handful of unauthenticated screenshots taken from the internet.

3      There is no excuse for Walmart's failure to disclose the purported prior art prior

4  during fact discovery, and such failure is not harmless. *Transamerica Life Ins. Co. v.*

5  *Lincoln Nat'l Life Ins. Co.*, 2008 U.S. Dist. LEXIS 103179 (N.D. Iowa Dec. 19,

6  2008)(excluding undisclosed prior art); *Bridgestone Sports Co. Ltd. v. Acushnet Co.*,

7  2007 U.S. Dist. LEXIS 11370 (D. Del. Feb. 15, 2007)(same).  Consequently,

8  Walmart's prior art references, all of which were produced for the first time after the

9  fact discovery deadline in this case, should be excluded.  *Apple Inc. v. Samsung Elecs.*

10 *Co.*, 786 F.3d 983, 1000 (Fed. Cir. 2015)("The evidence on the F700 was previously

11 excluded as a prior art reference under a Rule 37 sanction due to Samsung's failure to

12 timely disclose the evidence during discovery."); *Man Mach. Interface Techs., LLC v.*

13 *Vizio, Inc.*, 2012 U.S. Dist. LEXIS 200329 **4-6 (C.D. Cal. Feb. 27, 2012) (prior art

14 excluded because Defendant withheld this information from Plaintiff until the

15 discovery period ended).[1]

16      ### c.    *All of Walmart's Purported Prior Art is Inadmissible*

17      The party asserting obviousness has the burden of proving a patent is obvious

18 over prior art by clear and convincing evidence. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d

19 1572, 1576 (Fed. Cir. 1996).   Defendant has identified various references that it

20 asserts are "prior art" to the '941 Patent such as to render it invalid on grounds of

21 obviousness: Koolaburra-Fuzzin Faux II Sandal; Rasolli-Jhatna sandal; Signlinmoo

22 Slipper; Sonoma Goods for Life-Faux Fur. Defendant has not produced *any* admissible

23 evidence that the foregoing references were in public use (offered for sale, sold, or

24 described in publication) prior to the filing date of the applications of the '941 Patent.

25 "A trial court can only consider admissible evidence in ruling on a motion for

26 _____

27 [1] Courts have upheld the use of the excluding sanction provided by Rule 37(c)(1), even when a litigant's entire cause of action or defense has been precluded. *Cambridge*

28 *Elecs. Corp. v. MGA Elecs., Inc.* 227 F.R.D. 313, 321 (C.D. Cal., 2004)

summary judgment." *Orr v. Bank of Am.*, 285 F. 3d 764, 773 (9th Cir. 2002). Hearsay, which is an out of court statement used to prove the truth of the matter asserted, is not admissible. FRE 801(c), 802. Not only are the website screen shots purportedly depicting prior art hearsay, but Defendant has also failed to authenticate any of them and therefore inadmissible as prior art. See FRE 901(a). As this Court held in *Deckers v. Romeo & Juliette*, 2017 U.S. Dist. LEXIS 91711 **7-8 (June 13, 2017):

> "The Court also notes that Defendants fail to authenticate any of the pictures that they contend correspond to this boot style. This is problematic in two ways. First, of course, if the pictures are not authenticated, they are inadmissible on summary judgment for the purpose of an obviousness analysis. *Orr*, 285 F.3d at 773. Second, because there is no evidence showing that these pictures actually correspond to this boot style, the evidence purporting to prove the date this boot style was publicly available is meaningless. All we know is that some boot called "Rebels Cayenne boot" was offered for sale between 2004 and 2008; there is no evidence that the boots in these pictures (which form the entire basis of the obviousness analysis) are in fact the "Rebels Cayenne boot," and thus there no evidence that the boots in those pictures were offered for sale in the relevant time frame."

Similarly, the references proffered by Walmart cannot be considered "prior art" for purposes of the obviousness analysis. *Id.*[2]; see also 35 U.S.C. 102(b); *Solar Sun Rings*, 2012 U.S. Dist. LEXIS 156373, at *21 ("Prior art" references "may take the form of other patents, printed publications, or actual items which were in public use more than one year prior to the contested patent application.") citing *In re Harvey*, 12 F.3d 1061, 1065 (Fed. Cir. 1993).

---

[2] In *Deckers v. Romeo* this Court excluded numerous purported prior art references when Romeo attempted to authenticate them through various emails and other correspondence. *Id.* at **8-15 ("This is insufficient, as the relevant statements in the e-mail constitute inadmissible hearsay with no applicable exception. See Fed. R. Evid. 801(c), 802.") Even when Romeo offered declarations signed under oath, this Court excluded the prior art because "these boots are inadmissible as prior art because Defendants fail to authenticate any of the pictures that they contend correspond to this boot style." *Id.* at 10. Walmart's offering of prior art is even more anemic than Romeo's; making no attempt whatsoever to authenticate the screenshots.

1    The inherent unreliability of the website screenshots proffered by Defendant is

2  underscored by the Koolaburra Fuzz'n Faux II, the centerpiece of Defendant's prior art

3  argument.  Koolaburra is owned by Deckers.  Contrary to Walmart's purely

4  speculative representations to this Court, this item was first offered for sale in January

5  2020, over two years <u>after</u> the UGG® Fluff Yeah Slide was first offered for sale, and

6  cannot be prior art. SAF 43.  Clearly, the December 4, 2017 date depicted on ECF No.

7  54-9, pg. 6[3], not only is wrong, it appears to have been photoshopped onto the top of

8  another search result.  Indeed, a small photo also appears to have been photoshopped

9  to the right of the purported search date.  Oddly, Mr. Holden's own exhibit (ECF No.

10  54-10) which depicts a November 2020 date, contradicts his own representations.

11    ### d.    *Holden Failed to Analyze Obviousness*

12    Nowhere in Mr. Holden's reports or Declaration does he conduct an obviousness

13  analysis.  Instead, Holden simply concludes, without explaining why, that the '941

14  Patent "is likely not enforceable due to its invalidity in view of that prior art." ECF No.

15  56-6, para 4.4.  As this Court held in *Deckers v. Romeo*, "The conclusory opinion of

16  Defendants' expert … is insufficient to create a genuine dispute on these issues."

17  *Deckers v. Romeo*, 2017 US Dist. LEXIS 91711 *17, citing *ActiveVideo Networks, Inc.*

18  *v. Verizon Commc'ns, Inc*., 694 F.3d 1312, 1327 (Fed. Cir. 2012).  Indeed, Romeo's

19  expert was excluded altogether from testifying regarding obviousness at trial: "the

20  Court agrees with Deckers, and finds that Poetsch's testimony fails to provide

21  sufficient analysis which states how or why a person skilled in the art would have

22  found the claims of the patents at issue obvious."  *Deckers v. Romeo*, 2017 U.S. Dist.

23  LEXIS 217136 *9 (C.D. Cal. Oct. 6, 2017) citing *Innogenetics, N.V. v. Abbott Labs*.,

24  512 F.3d 1363, 1373 (Fed. Cir. 2008) (upholding district court's exclusion of expert

25  testimony).

26

27

28  [3] As many commentators and even Google advises, these dates can be unreliable for a
variety of reasons.  Blakely Decl. Ex.

Here, Mr. Holden offers no opinion whatsoever as to why he believes the '941 patent is obvious. In other words, he failed to "state how or why a person ordinarily skilled in the art would have found the claims . . . obvious . . ." *Innogenetics*, at 1373. Mr. Holden doesn't even attempt to discuss primary or secondary references and instead only stumbles to a bumbling conclusion of invalidity; likely because he has a complete lack of understanding of what the standards for invalidity even are. Mr. Holden's opinion is basically limited to aping counsel for Walmart's position that the unauthenticated website screenshots are somehow invalidating prior art. As discussed more thoroughly in Deckers' evidentiary objections, as in *Romeo*, Mr. Holden's unexplained and unsubstantiated conclusions should be disregarded.

In conducting the obviousness analysis, "it is the overall appearance, the visual effect as a whole of the design, which must be taken into consideration." *In re Harvey*, 12 F.3d at 1065 cited by *Solar Sun Rings*, 2012 U.S. Dist. LEXIS 156373, at *14. The '941 Patent covers the ornamental design for a footwear upper and midsole, as shown and described. Where Defendant has not produced images or samples of the alleged prior art beyond that which is shown in Mr. Holden's report, none of the ornamental features exhibited in Figures 3 (medial side) and 5 (back side) of the '941 Patent are shown, and thus, these designs as a whole are not similar enough to the '941 Patent such as to render it invalid.

Walmart's expert also altogether fails to address secondary considerations. A commercially successful product exists for a large brand, such as the UGG® brand, when ▮▮▮▮▮ pairs are sold over 3.5 years. Since its introduction in the 2018 season, Deckers' sales from the UGG® Fluff Yeah Slide have exceeded ▮▮▮▮▮ which is considered a phenomenal success by footwear industry standards. SAF 40.

Where Deckers has presented evidence that the UGG® Fluff Yeah Slide has been commercially successful "it is presumed that the commercial success is due to the patented invention." *Asetek Danmark A/S v. CMI United States, Inc*., 100 F. Supp. 3d 871, 885 (N.D. Cal. 2015); see also *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1310-11 (Fed.

Cir. 2010).  Defendant then bears the burden to prove that the commercial success is instead "due to extraneous factors other than the patented invention, such as advertising, [or] superior workmanship…" *Id*. Defendant has not presented any evidence to prove that the commercial success of the UGG® Fluff Yeah Slide was due to other factors besides its design nor have they retained any experts to provide an opinion on this matter. Furthermore, the UGG® Fluff Yeah Slide has received much unsolicited media exposure, non-obviousness of the '941 Patent is apparent where it has often been the target of unauthorized third-party copying.  SAF 38,39.  Defendant has fallen well short of demonstrating, by clear and convincing evidence, that the '941 Patent is obvious in light of prior art.[4]

## 2. Walmart Infringed Upon the '941 Patent

To prevail on its design patent infringement claim, Plaintiff must prove that, without its consent, Defendant used in commerce a design substantially similar to the patented design so as to cause confusion in the eye of the ordinary observer. *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). "The comparison step of the infringement analysis requires the fact-finder to determine whether the patented design *as a whole* is substantially similar in appearance to the accused design." *OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Solar Sun Rings*, 2012 WL 5379144 at *2 citing to *Gorham Co. v. White*, 81 U.S. 511, 528 (1871). Complete similarity is not required to find infringement, and "minor changes in a design

---

[4] Because Walmart first raised the affirmative defense of obviousness in its Motion for Summary Judgment, Deckers has not been given the opportunity to obtain an expert opinion on this issue, something that often takes months to complete.  If this Court allows the introduction of this belated obviousness defense, Deckers requests an opportunity to provide an expert opinion on this issue.  FRCP 56(d) Blakely Dec. ¶¶47-50.

are often readily made without changing its overall appearance." *Id*.; see also *Crocs, Inc. v. Int'l Trade Com'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) ("minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.").

Here, Walmart's infringement of Deckers' federally registered '941 patent is indeed blatant, as not only are the design elements of the Accused Products identical to that of the patented features (as shown below), but that Walmart has produced evidence that it *intended* for the Accused Products to be knockoffs of the UGG® Fluff Yeah Slide. SAF 66-69.

| **Design Patent D866,941** <br> **Issued Nov. 19, 2019** | **Walmart's Accused Products** |
|:---:|:---:|






As Plaintiff's expert opines, an ordinary observer would find the design claimed in the '941 patent and the Accused Product are substantially the same. SAF 64.

### B.    Plaintiff Should Prevail on its Trade Dress Claim

To succeed on a claim for infringement of an unregistered trade dress, a party must "prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). The Ninth Circuit has stressed that in evaluating the elements of a trade dress claim, "it is crucial that [courts] focus not on the individual

elements, but rather on the overall visual impression that the combination and
arrangement of those elements create." *Clicks Billiards* at 1259.

Deckers has defined its UGG® Fluff Yeah Trade Dress as follows:

- A slipper and sandal combined into a statement shoe made famous by the
  UGG® brand;
- A platform, sling back slide;
- A platform sole with a furry footbed and furry perimeter sides;
- A wide vamp having a furry exterior;
- An open toe; and
- An elastic heel strap extending from one side of the vamp to the other.

  

ECF No. 1 ¶¶ 22 & 23.

**1.    The UGG Fluff Yeah Sandal Has Acquired Secondary Meaning**

"To succeed on a trade dress infringement based on product design, the plaintiff
must show that her design has attained secondary meaning." *Art Attacks Ink, LLC v.
MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009).  When deciding whether
secondary meaning exists for a particular trade dress, courts consider such things as:
(1) whether actual purchasers associate the dress with the source; (2) the degree and
manner of advertising by the party seeking protection; (3) the length and manner of use
of the dress, and (4) whether the use by the party seeking protection has been
exclusive. See *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir), cert
denied, 493 U.S. 872 (1989). Other considerations such as sales success and attempts
by others to imitate the mark also favor finding secondary meaning. See *Clicks
Billiards*, 251 F.3d at 1266.  Finally, if a defendant deliberately copies a trade-dress, an

1  inference arises of secondary-meaning. *Id*.; *Adidas-Salomon Ag v. Walmart Corp*., 228

2  F. Supp. 2d 1192 (D. Or. 2002)

3      Since its introduction in 2018, the UGG® Fluff Yeah Slide has sold over █

4  █   pairs and generated over █      in revenue in the United States, making

5  this a "hero" product in the footwear industry. SAF 40. In fact, during this period the

6  UGG Fluff Yeah accounted for almost 9% of the total sandal sales in the United States,

7  and 22% of the sandals sold for more than $75.00. SAF 89.  Deckers has also spent

8  approximately $█      on advertising and marketing associated with the UGG®

9  Fluff Yeah Slide since 2018. SAF 36. The strong secondary meaning of the UGG®

10  Fluff Yeah Slide is demonstrated by extensive celebrity and social media coverage.

11  SAF 39.

12      As discussed above, because Deckers UGG® Fluff Yeah Slide has been

13  incredibly successful, it has been the subject of numerous knockoffs.  Deckers has filed

14  numerous lawsuits against infringers, including but not limited to Steve Madden, Gap,

15  BEBE, and others. SAF 52-53.   Walmart's deliberate and close copying of Deckers'

16  trade dress, alone, is sufficient to establish secondary meaning in the Plaintiff's trade

17  dress. *Faberge, Inc. v. Saxony Products, Inc*., 605 F.2d 426, 428 (9th Cir. 1979).

18  "There is no logical reason for the precise copying save an attempt to realize upon a

19  secondary meaning that is in existence." *Audio Fidelity, Inc. v. High Fidelity*

20  *Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960).[5]

21      **2.    Defendant's Functionality Argument is Meritless**

22      As a threshold matter, during his deposition Walmart's expert, Mr. Holden,

23  stated that in his opinion the Fluff Yeah Trade Dress is non-functional.  SAF 31.

24

25

26  [5] This undeniable proof of secondary meaning is confirmed by the survey by Matt

27  Ezell, which provides a high 39% recognition rate. As discussed in Deckers'
    evidentiary objections filed concurrently herewith, the Neal survey is of little if any

28  value due to the defective control cell.

Even had Walmart not made this admission, the Fluff Yeah is Trade Dress is clearly non-functional.

It is improper to find a product design functional simply because it includes elements that are functional. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859 (9th Cir. 2020). The Ninth Circuit's standard for non-functionality is forgiving—it is perfectly appropriate for a plaintiff to define its trade dress as "the 'overall appearance' of its product," and the proper standard for functionality in such a scenario is whether "'protecting the trade dress threatens to eliminate a substantial swath of competitive alternatives in the relevant market.'" *Id.* at 864-7.

In *Blumenthal* the Ninth Circuit explained: "[E]very chair's appearance is affected by having a backrest. . . which serves the utilitarian function of providing back support.  But that does not mean that every chair's overall appearance is functional as a matter of law." *Id.* at 867. Rather, a claimed design has utilitarian functionality only if the four *Disc Golf* factors weigh in factor of such a finding.  *Id.* Those factors are: (1) whether the design yields a utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts the utilitarian advantages of the design; and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture.  *Id.*

In *Blumenthal*, the Ninth Circuit rejected the defendant's argument that Herman Miller's iconic Eames chairs were functional, noting that they were "nothing like" the "thoroughly utilitarian products" the Court previously found to be functional, which included "a pocket-knife-like tool," "a tool used in emergencies to quickly cut people out of wheelchairs," and "a piece of industrial machinery called a 'traction hoist.'" *Id.* at *6.  It noted: "In each of those cases, the product's form followed its utilitarian functions, and there was no evidence of any non-utilitarian design choices." *Id.*  The Court also reversed judgment that Herman Miller's highly ergonomic and comfortable Aeron chairs were functional because it relied on "an erroneously broad definition of functionality." *Id.* at 867-8.

Here, like the chair designs at issue in *Blumenthal*, the UGG® Fluff Yeah Slide is nothing like "thoroughly utilitarian" pocket-knives and traction hoists. The Fluff Yeah Trade Dress does not provide a utilitarian advantage over other slide designs in the market. SAF 31.  Furthermore, many alternative designs exist. Id. The design of the UGG® Fluff Yeah Slide does not result from an inexpensive method of manufacturing. Id.

While slides (like chairs) are designed for comfort, there are many slides in the marketplace that may serve the same functions as the UGG® Fluff Yeah Slide, but which look entirely different. Id.  And while some of these elements may serve a function, much like the chair backrest in *Blumenthal*, the proper inquiry regarding functionality is to look to the overall visual impression of the elements taken in combination.  As both parties' experts agree, the Fluff Yeah trade dress is non-functional. Id.

### 3.    Defendant's Deliberate Copying of the Fluff Yeah Trade Dress is Likely to Cause Consumer Confusion

Likelihood of confusion in the trade dress context is evaluated by reference to the same *Sleekcraft* factors used in the ordinary trademark context: strength of the trade dress, similarity between plaintiff's and defendant's trade dress, evidence of actual confusion, marketing channels used, type of goods and likely degree of purchaser care, and the defendant's intent in selecting its trade dress.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 616 (9th Cir. 1989). In addition, the court should take into consideration post-sale confusion, the similarity of the trade dress when considered away from the point of sale and stripped of any packaging that may be attached to the product and removed upon use. *See Levi Strauss v. Bluebell, Inc.*, 632 F.2d 817 (9th Cir. 1980), as well as initial interest confusion, which "is customer confusion that creates initial interest in a competitor's product. Although dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the

goodwill associated with a mark and is therefore actionable trademark infringement.'" *Multi Time Mach., Inc. v. Amazon.com, Inc*., 804 F.3d 930, 946 (9th Cir. 2015)

**The Fluff Yeah Trade Dress is Incredibly Strong** - Strength of the trade dress is demonstrated by "extensive advertising, length of time in business, public recognition and uniqueness." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988). Conceptual strength rests on its distinctiveness, which, in turn, is related to the question of secondary meaning. Because there is evidence of the secondary meaning developed in connection with the Fluff Yeah Trade Dress, the Court need not evaluate the level of inherent distinctiveness of the trade dress. *Multicraft Imps. v. Mariposa United States*, 2018 U.S. Dist. LEXIS 245368 *26 (C.D. Cal. Jan. 19, 2018). Commercial strength also concerns the marketplace recognition of the trade dress at issue. *Id*. Deckers has presented evidence that the UGG® Fluff Yeah Slide, the embodiment of the Fluff Yeah Trade Dress, is commercially strong.

**The Parties' Product are Identical** - Relatedness of the parties' goods, reflects the common-sense intuition that "the danger of consumer confusion is heightened" where goods are related or complementary. *E. & J. Gallo Winery v. Gallo Cattle Co*., 967 F.2d 1280, 1291 (9th Cir. 1992). Where "the products are very similar," a "lower showing of similarity between the marks" is required. Related goods are more likely to cause confusion than unrelated goods, and therefore the Ninth Circuit has held that a diminished standard of similarity is applied when comparing the marks of closely related goods. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993). The goods in question are essentially the same product. Thus, this factor weighs in favor of Plaintiff.

**Walmart Acted with Bad Intent** – Where "one party knowingly adopts a mark similar to another's. . . courts presume that the defendant will accomplish its purpose, and that the public will be deceived." Moroccanoil, Inc. v. Zotos Int'l, Inc., 230 F. Supp. 3d 1161, 1177 (C.D. Cal. 2017) Thus, where evidence shows that one company deliberately adopted another's trade dress to obtain advantage from the other's good

will, courts may infer a likelihood of confusion. *Fleischmann Distilling Corp. v. Maier Brewing Co*., 314 F.2d 149, 157-58 (9th Cir. 1963).  As set forth in the January 7, 2020 email wherein Walmart sent photos of the UGG® Fluff Yeah Slide to one of its' footwear suppliers, Pajar, Walmart deliberately set out to copy this incredibly successful style. SAF 66. One month later, Pajar provided Walmart with designs for its Kendall + Kylie knockoff sandal. Id. In August 2020, Walmart asked another one of its suppliers, S Goldberg, whether it could make non-Kendall + Kylie branded UGG® knockoffs, even providing a link to ugg.com for reference.  SAF 67. In September 2020, Pajar, in connection with a second production run, proposed changes to make the Kendall + Kylie knockoff more like the UGG® Fluff Yeah Slide, even providing a side-by-side comparison of the two products. SAF 68.

Walmart's continued sale of the Accused Product after being sued by Deckers also evidences deliberate infringement.  *Int'l Star Class Yacht Racing Ass'n v. Hilfiger*, 80 F.3d 749, 754 (2nd Cir. 1996) Walmart began selling the Accused Product on August 29, 2020.  SAF 60. Deckers filed this lawsuit shortly thereafter, on October 16, 2020, clearly placing Walmart on notice of Deckers' rights.  ECF No. 1.  In utter disregard of Deckers' rights, Walmart continued the sale of the Accused Product into 2022. SAF 72.

Further, the striking similarities between the products provide overwhelming evidence for the jury to conclude Walmart intentionally copied the Fluff Yeah.  Intent is frequently established with such evidence.  E.g., *CytoSport, 617 F. Supp. 2d at 1073; Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 68 F. Supp. 3d 1170, 1175 (C.D. Cal. 2014) (similarity is "circumstantial evidence of intentional copying"); *NEXxUS Products Co. v. Gentle Concepts, Inc*., 1993 WL 496824, at *7 (M.D. Fla. Apr. 30, 1993) ("[s]uch similarity could not have been accomplished ... without a deliberate intent to copy").

Past accusations of trademark infringement are probative of intent.  *Burberry Ltd. v. Salim*, 2013 WL 12146120, at *4 (C.D. Cal. July 12, 2013); *Playboy*

*Enterprises Inc. v. Hsin I. Chen*, 1997 WL 829339, at *12 (C.D. Cal. Oct. 1, 1997).
Here, there is a compelling record from which the jury could conclude Walmart
repeatedly copied brands while disregarding their rights. In fact, over the past fifteen
years, Walmart has been sued for infringement more than 200 times. SAF 56.  Indeed,
Deckers has previously sued Walmart twice for infringement of its iconic footwear.
SAF 57. Rather than implementing comprehensive measures to combat its rampant
infringement, Walmart has instead turned a blind eye to the problem, doing nothing
more than attempting to shift the blame onto its suppliers for Walmart's own
deliberate, illegal conduct.  SAF 88. *Telebrands Corp. v. HM Imp. USA Corp.*, 2012
WL 3930405, at *5 (E.D.N.Y. July 26, 2012) ("A finding of willful infringement is
particularly appropriate where, as here, the same defendant had been previously sued
for similar violations yet failed thereafter to take steps to avoid infringing the
intellectual property rights of others."); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58
F.3d 849, 854 (2nd Cir. 1995).

     **The Parties' Respective Trade Dress are Highly Similar** - "Trade dress
protection applies to 'a combination of any elements in which a product is presented to
a buyer,' including the shape and design of a product." *Art Attacks Ink, LLC v. MGA
Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) A trade dress claim involves "the total
image of a product and may include features such as size, shape, color or color
combination, texture, graphics, or even particular sales techniques." *Mattel, Inc. v.
Walking Mountain Prods.*, 353 F.3d 792, 808 n. 13 (9th Cir. 2003). As with
trademarks, "[s]imilarities weigh more heavily than differences." *Id.*; see also *Lisa
Frank*, 799 F. Supp. at 996-997 (finding that "[t]he striking similarities found in the
product … design cannot be explained away as mere coincidence," notwithstanding
that "by considering the individual features—separate and apart from the trade dress as
a whole—numerous distinctions can be made").  In addition, a lesser degree of
similarity between two parties' marks is required when the marks are applied to
identical goods or services. See *HRL Associates, Inc. v. Weiss Associates, Inc.*, 1989

TTAB LEXIS 33, 12 U.S.P.Q.2D (BNA) 1819 (TTAB 1989), aff'd 902 F.2d 1546
(Fed. Cir. 1990).  As Plaintiff's expert sets forth in detail, the Accused Product is
strikingly similar to the design of the Fluff Yeah Trade Dress.  (db 101-105) The
similarity between the products are not only unmistakable, they are intentional.  See
*Clicks Billiards*, 251 F.3d 1252, 1257 (9th Cir. 2001) ("[I]t is crucial that we focus *not*
on the individual elements, but rather on the overall visual impression that the
combination and arrangement of those elements create.").

    **The Parties Sell to the Same Consumers** - Convergent marketing channels
"increase the likelihood of confusion." *Pom Wonderful*, 775 F.3d at 1130.  The
Parties' respective products are sold in the same outlets.  Significantly, the UGG®
Fluff Yeah Slide and the Accused Product are both sold on Walmart.com. SAF 54, 59,
61. Moreover, numerous courts have found marketing channel convergence even when
(unlike here) the parties' goods were sold only in different outlets. *Id.* at 1130-31
(court "clearly erred" in requiring plaintiff to prove products were sold in same brick-
and-mortar stores).[6] Rather, in evaluating the marketing channel factor, courts take a
broad view and "consider whether the parties' customer bases overlap and how the
parties advertise and market their products." *Id*.  Here, both Plaintiff and Defendant
are selling the same products to the same consumers.

    Further evidencing convergence, both parties use online marketing as the
primary tool to promote their respective brands, and they use the same platforms (e.g.,
Instagram, Pinterest, YouTube) in the same ways. SAF 73-74   See *Treemo, Inc. v.
Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1363-4 (W.D. Wash. 2014)(marketing channels
factor favored mark holder where both parties used Internet as primary
marketing/advertising channel); *Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 896-

---

[6] See also *Moroccanoil,* 230 F. Supp. 3d at 1175-76 (marketing channels factor favored
plaintiff even though plaintiff's products were sold at high-end stores and defendant's
products were sold at a lower-priced beauty store chain); *Boldface Licensing +
Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1194. (C.D. Cal. 2013)

97 (N.D. Cal. 2010) (same where both parties made extensive use of the same search engines and social media platforms).

Finally, consumers are used to finding lower-priced diffusion lines of mid-market brands, and even luxury brands, at Walmart.  Because of this, consumers will easily believe that Walmart's Kendall + Kylie Accused Products are either an UGG® diffusion line or a collaboration. SUF  See *Guess?, Inc. v. Tres Hermanos*, 993 F. Supp. 1277, 1283 (C.D. Cal. 1997) (noting the "common practice of many 'designer' brands" to maintain "bridge" brands "which consumers understand originate from the same source but are lesser priced"); McCarthy § 24:52.

**The Degree of Care Factor Favors Deckers** - Confusion can occur even among careful purchasers of expensive products, such as the high-end boats at issue in *Sleekcraft*.  599 F.2d at 353.  Likelihood of confusion increases, however, "when goods are inexpensive and unsophisticated."  Pac. Sunwear of Cal. Inc. v. KP Fashion Co., 2009 U.S. Dist. LEXIS 139342 (C.D. Cal. March 20, 2009); see also *Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). Here, both parties sell sandals to consumers, and numerous courts have held that such customers are not particularly sophisticated.  E.g., *Macy's Inc. v. Strategic Marks, LLC*, 2016 WL 374147, at *8 (N.D. Cal. Feb. 1, 2016) (low degree of care for t-shirts priced from $24-$29.99); *K-Swiss, Inc. v. USA Aisiqi Shoes, Inc.*, 291 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003) (holding that consumers exhibit a low degree of care in purchasing athletic shoes). Although Deckers mid-market price points are higher than Walmart's mass-market prices, they are still several orders of magnitude below the price points of goods typically described by courts as "expensive" in the degree-of-care analysis. McCarthy § 23:97 (identifying homes, race cars, yachts, and residential schools as "expensive" goods receiving greater degree of care).  Furthermore, given Walmart's general reliance on diffusion lines and partnerships with high-end brands, consumers may wrongly conclude that its Kendall + Kylie Accused Products represent an UGG® diffusion line or other brand partnership.  *Guess?*, 993 F. Supp. at 1283 (consumers

were likely to see defendant's lower-priced products with "similar but not identical logo" as a diffusion line); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir. 1986).[7]  SAF 42, 87.

### 4.    Deckers' State Law Claims for Trade Dress Infringement are Not Preempted

The imitation of the trade dress of Deckers UGG® Fluff Yeah Slide by Walmart is unlawful under both state and federal laws. *Audio Fidelity Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 554-555 (9th Cir. 1960).

## IV.    CONCLUSION

Based upon the foregoing, Deckers' respectfully requests that this Court DENY Defendant's Motion for Summary Judgment in its entirety.  Furthermore, pursuant to FRCP 56(f) and this Court's Standing Order, Deckers respectfully requests that this Court grant summary judgment in Plaintiff's favor, holding that: 1) the '941 Patent is not obvious and is valid; 2) Walmart infringed on the '941 Patent; 3) the Fluff Yeah Trade Dress has acquired secondary meaning; 4) the Fluff Yeah Trade Dress is not functional; and 5) that there is a strong likelihood of confusion between the UGG® Fluff Yeah Slide and the Accused Product.

DATED:  March 11, 2022                BLAKELY LAW GROUP

                                     By:  */s/ Brent Blakely*
                                             Brent H. Blakely
                                             Jamie Fountain
                                             ***Attorneys for Plaintiff***
                                             ***Deckers Outdoor Corporation***

---

[7] The actual confusion and likelihood of expansion factors are both neutral. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1132 (9th Cir. 2014)(actual confusion is not necessary to a finding of likelihood of confusion and because it is difficult to find, its absence is generally unnoteworthy); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999)(expansion in product lines factor is unimportant where two companies already compete)