Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff
Deckers Outdoor Corporation*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>　　　　　　　Plaintiff,<br>　v.<br>WALMART INC., and DOES 1-10, inclusive,<br><br>　　　　　　　Defendants. | CASE NO. 2:20-cv-09521-FLA (Ex)<br><br>**DECLARATION OF BRENT H. BLAKELY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Hon. Fernando L. Aenlle-Rocha** |

**DECLARATION OF BRENT H. BLAKELY**

# DECLARATION OF BRENT H. BLAKELY

I, Brent H. Blakely, declare as follows:

1. I am an attorney at Blakely Law Group, counsel for Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") in the above-entitled action. I have personal knowledge of the matters set forth herein, and if called upon as a witness could competently testify thereto.

2. Blakely Law Group has been representing Deckers in intellectual property litigation, including the enforcement of design patents, trade dresses, and trademarks, since 2012. I have been counsel of record in all actions wherein Blakely Law Group has represented Deckers in litigation. The statements made in this declaration are based upon my own personal knowledge and experience from working with Deckers as well as consultation of records/documents at Blakely Law Group regarding Deckers and discussions with other employees and/or agents at Deckers and at Blakely Law Group.

3. My firm has represented Deckers in two prior litigations against Wal-Mart Stores, Inc. (now Walmart, Inc.) for trademark infringement and patent infringement with regards to U.S. Patent Nos. D599,999 and D616,189: *Deckers Outdoor Corporation v. Wal-Mart Stores, Inc.,* C.D. Cal. Case No. 2:14-cv-02577; and *Deckers Outdoor Corporation v. Wal-Mart Stores, Inc.; et al.,* C.D. Cal. Case No. 2:19-cv-04414. Attached hereto and incorporated herein as **Exhibit 1** is a true and correct copy of the Complaint filed in *Deckers Outdoor Corporation v. Wal-Mart Stores, Inc.,* C.D. Cal. Case No. 2:14-cv-02577. Attached hereto and incorporated herein as **Exhibit 2** is a true and correct copy of the Complaint filed in *Deckers Outdoor Corporation v. Wal-Mart Stores, Inc.; et al.,* C.D. Cal. Case No. 2:19-cv-04414.

4. Additionally, my firm represented Chrome Hearts, LLC in an infringement action against Wal-Mart Stores, Inc. (now Walmart, Inc.) in *Chrome Hearts LLC v. Wal-Mart Stores, Inc.*, C.D. Cal. Case No. 2:15-cv-02933. Attached hereto and incorporated herein as **Exhibit 3** is a true and correct copy of the Complaint

filed in *Chrome Hearts LLC v. Wal-Mart Stores, Inc.*, C.D. Cal. Case No. 2:15-cv-02933. Attached hereto and incorporated herein as **Exhibit 4** is a true and correct copy of the Walmart's Supplemental Discovery Responses to Interrogatories in *Chrome Hearts LLC v. Wal-Mart Stores, Inc.*, C.D. Cal. Case No. 2:15-cv-02933. Attached hereto and incorporated herein as **Exhibit 5** is a true and correct copy of the Deposition of Kinna Thomas, Walmart's 30(b)(6), taken in *Chrome Hearts LLC v. Wal-Mart Stores, Inc.*, C.D. Cal. Case No. 2:15-cv-02933 on March 22, 2016.

5. On October 16, 2020, Plaintiff filed its Complaint against Defendant Walmart, Inc. for trade dress infringement and unfair competition under the Lanham Trademark Act of 1946, 15 U.S.C. §1125 et seq. (the "Lanham Act"), patent infringement arising under the patent laws of the United States, and for related claims under the statutory and common law of the state of California after discovering Defendant's production, advertisement, offering for sale, and/or sale of infringing footwear products bearing unauthorized reproduction of Plaintiff's Fluff Yeah Trade Dress and U.S. Patent No. D866,941 (issued on November 19, 2019) (" '941 Patent"). *See* ECF No. 1.

6. On January 25, 2021, Defendant filed an Answer in response to the Complaint filed in the present action. *See* ECF No. 20.

7. Defendant did not assert an invalidity defense based upon indefiniteness, obviousness, and/or anticipation in its Answer. *See* ECF No. 20.

8. On July 16, 2021, Defendant served its Initial Disclosures on Plaintiff. Attached hereto and incorporated herein as **Exhibit 6** is a true and correct copy of Defendant's Initial Disclosures served in the present action. Defendant did not disclose any prior art in its Initial Disclosures or in any Supplemental Disclosures.

9. On May 18, 2021, Plaintiff served Defendant with Plaintiff's First Set of Interrogatories and First Set of Request for Production regarding issues such as Plaintiff's claims alleged in the Complaint, and Defendant's affirmative defenses.

10. Deckers commenced production of documents in this action beginning in or around October 28, 2021 and continued to produce documents on a rolling basis until the end of discovery, which concluded on January 14, 2021. At no point did Defendants serve and/or file any motions challenging the adequacy of Deckers' discovery responses or document production.

11. On November 19, 2021, because Defendant failed to produce documents in response to Plaintiff's discovery requests and Defendant failed to provide its portion of the joint stipulation pursuant to Local Rule 37-1, Plaintiff moved to compel amended discovery responses and documents. *See* ECF No. 41.

12. On November 30, 2021, this Court ordered Defendant to provide amended discovery responses and produce documents no later than December 7, 2021. *See* ECF No. 44.

13. On December 14, 2021, Defendant produced amended discovery responses and documents pursuant to the Court's November 30th Order bates numbered WM-DECKERS0000001- WM-DECKERS0000002; and WM-DECKERS0000056- WM-DECKERS0000059. Attached hereto and incorporated herein as **Exhibit 7** and **Exhibit 8** are true and correct copies of Defendant's supplemental responses to Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Request for Production, respectively. Attached hereto and incorporated herein as **Exhibit 9** is a true and correct copy of an email from Defendant's counsel on December 14, 2021 with a link to the produced documents and amended responses.

14. On January 14, 2022 at 5:00 p.m., the discovery deadline in this case and over a month past the date ordered by this Court, Defendant produced documents involving Defendant's sales and purported costs of the Accused Products which it was required to have produced no later than December 7, 2021, pursuant to the Court's Order (*See* ECF No. 44). Attached hereto and incorporated herein as **Exhibit 10** is a true and correct copy of an email from Defendant's counsel from January 14, 2022 with a link to the produced documents.

15.     On January 30, 2022, Defendant served Plaintiff for the first time with additional documents, including website screenshots of purported prior art which it is now attempting to use in its Motion for Summary Judgment. Attached hereto and incorporated herein as **Exhibit 11** is a true and correct copy of an email from Defendant's counsel from January 30, 2022 with a link to the produced documents.

16.     Attached hereto and incorporated herein as **Exhibit 12** are relevant portions of the deposition transcript of Nevada Efrid, 30(b)(6) for Walmart, Inc. which was taken on January 7, 2022, along with exhibits.  Despite being designated on the issue, Ms. Efrid had no knowledge whatsoever regarding any efforts taken by Walmart to locate and produce documents in this case.

17.     During the course of discovery, Defendant has not produced any sketches or drawings that would suggest that Walmart conceived of the design of the Accused Products.

18.     During the course of discovery, Defendant did not produce any evidence to prove that the commercial success of the UGG® Fluff Yeah Slide was due to other factors besides its design nor have they retained any experts to provide an opinion on this matter.

19.     On February 11, 2022 the parties exchanged initial reports. I reviewed Defendant's initial expert reports by Lenny Holden and David Neal. Mr. Holden's Initial Report cites to several prior art references which Defendant served on Plaintiff after the discovery cut-off. However, Mr. Holden's report does not provide an opinion regarding obviousness, anticipation, and/or inequitable conduct, nor even mentions those defenses. Rather, Mr. Holden confusingly cited prior art in the context of Deckers' trade dress claims.

20.     Attached hereto and incorporated herein as **Exhibit 13** is a true and correct copy of Lenny Holden's Initial Report dated February 10, 2022, along with exhibits.

21. Attached hereto and incorporated herein as **Exhibit 14** is a true and correct copy of Exhibit C to David Neal's Initial Report dated February 11, 2022.

22. Other than a date appearing in connection with an apparent Google Search, Defendants have provided no evidence that the designs referenced in the alleged prior art were offered for sale prior to the Filing Date of the '941 Patent.

23. On February 25, 2022 Defendant provided Mr. Holden's Rebuttal Report dated February 24, 2022. I reviewed Mr. Holden's Rebuttal Report and it does not mention obviousness. As with his initial report, Mr. Holden confusingly referenced prior art in connection with Deckers' trade-dress claims. Attached hereto and incorporated herein as **Exhibit 15** is a true and correct copy of Lenny Holden's Rebuttal Report dated February 24, 2022, along with exhibits.

24. Defendant has not provided evidence that a complete comparison of all views of the Rasolli-Jhatnna sandal, Signlinmoo Slipper, Sonoma Goods for Life-Faux Fur sandal, and the Koolaburra® Fuzz'n II as compared to the '941 Patent was done.

25. Attached hereto and incorporated herein as **Exhibit 16** are relevant portions of the deposition transcript of Lenny Holden, which was taken on March 9, 2022.

26. In the course of discovery, Defendants produced Emails between Samantha Sandone and Kerri Jackson from February 6, 2020 to February 7, 2020 (Bates Nos. WM-DECKERS 0000003 - WM-DECKERS 0000004) and the Attachments Thereto (WM-DECKERS 0000005 - WM-DECKERS 0000006) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated herein as **Exhibit 17** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000003 - WM-DECKERS 0000006.

27. In the course of discovery, Defendants produced Emails between Samantha Sandone, Kerri Jackson, and Greg Nicoghosian from December 17, 2019 to February 7, 2020 (WM-DECKERS 0000056 - WM-DECKERS 0000058) and the

Attachment Thereto (WM-DECKERS 0000059) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated herein as **Exhibit 18** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000056 - WM-DECKERS 0000059.

28. In the course of discovery, Defendants produced Emails between Samantha Sandone and Kerri Jackson from January 29, 2020 to January 30, 2020 (WM-DECKERS 0000096 - WM-DECKERS 0000097) and the Attachment Thereto (WM-DECKERS 0000098) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated herein as **Exhibit 19** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000096 - WM-DECKERS 0000098.

29. In the course of discovery, Defendants produced Emails between Patty Cerqueira and Nevada Efrid from August 27, 2020 (WM-DECKERS 0000125) and the Attachment Thereto ((WM-DECKERS 0000126 – WM- DECKERS 0000131) with Respect to the Manufacturing and Design of "Fluff Slippers". Attached hereto and incorporated herein as **Exhibit 20** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000125 - WM-DECKERS 0000131.

30. In the course of discovery, Defendants produced Emails between Greg Nicoghosian and Samantha Sandone from September 23, 2020 to September 24, 2020 (WM-DECKERS 0000218 - WM-DECKERS 0000220) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated herein as **Exhibit 21** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000218 - WM-DECKERS 0000220.

31. In the course of discovery, Defendants produced Emails between Greg Nicoghosian and Samantha Sandone from September 23, 2020 to September 30, 2020 (WM-DECKERS 0000260 - WM-DECKERS 0000263) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated

herein as **Exhibit 22** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000260 - WM-DECKERS 0000263.

32. In the course of discovery, Defendants produced Emails between Kelsey Smotzer and Samantha Sandone from February 5, 2021 (WM-DECKERS 0000324 - WM-DECKERS 0000325) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated herein as **Exhibit 23** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000324 - WM-DECKERS 0000325.

33. In the course of discovery, Defendants produced Emails between Yvonne Yip, Pete Degrand, and Greg Nicoghosian from February 9, 2021 (WM-DECKERS 0000336 - WM-DECKERS 0000340) with Respect to the Manufacturing and Design of the Accused Product. Attached hereto and incorporated herein as **Exhibit 24** are true and correct copies of Walmart's document production Bates Nos. WM-DECKERS 0000336 - WM-DECKERS 0000340.

34. I instructed my staff to run an Advanced Party Search on PACER for civil litigation matters involving intellectual property disputes in which Defendant was a named defendant. Attached hereto and incorporated herein as **Exhibit 25** and produced as Bates No. DOC 002761-DOC 002764 in this litigation is a true and correct copy of printouts from staff at Blakely Law Group's PACER search.

35. On March 7, 2022, I visited Walmart's YouTube Channel. Attached hereto and incorporated herein as **Exhibit 26** is a true and correct copy of a printout from Walmart's YouTube Channel.

36. On March 7, 2022, I visited Walmart's Pinterest. Attached hereto and incorporated herein as **Exhibit 27** is a true and correct copy of a printout from Walmart's Pinterest Page.

37. On March 10, 2022, I visited Walmart's Instagram. Attached hereto and incorporated herein as **Exhibit 28** is a true and correct copy of a printout from Walmart's Instagram.

38. On March 10, 2022, I visited UGG® brand's Instagram. Attached hereto and incorporated herein as **Exhibit 29** is a true and correct copy of a printout from UGG® brand's Instagram.

39. On March 7, 2022, I visited UGG® brand's Pinterest. Attached hereto and incorporated herein as **Exhibit 30** is a true and correct copy of a printout from UGG® brand's Pinterest Page.

40. On March 7, 2022, I visited UGG® brand's YouTube. Attached hereto and incorporated herein as **Exhibit 31** is a true and correct copy of a printout from UGG® brand's YouTube.

41. On March 7, 2022, I visited Walmart's website www.walmart.com and searched for "UGG Fluff Yeah Slide". Attached hereto and incorporated herein as **Exhibit 32** is a true and correct copy of a printout from Walmart's website where authentic UGG® Fluff Yeah Slides are available for purchase.

42. On March 7, 2022, I visited Google Search Central. Attached hereto and incorporated herein as **Exhibit 33** is a true and correct copy of printouts of a blog post titled "Help Google Search know the best date for your webpage" from Google's Search Central indicating that dates appearing in connection with a Google Search may not always be accurate.

43. On March 10, 2022, I visited Ask Leo by Leo Notenboom (askleo.com). Attached hereto and incorporated herein as **Exhibit 34** is a true and correct copy of Ask Leo!'s article "Why Do Search Results Not Have Dates?" by Leo A. Notenboom discussing the indicating that dates appearing in connection with a Google Search may not always be accurate.

44. The UGG Fluff Yeah Slide is typically sold at retail for $65-$100.00, and can be purchased online, at UGG stores, and at various retailers such as Nordstrom, Dillards, Macy's, Zappo's.

45. Attached hereto and incorporated herein as **Exhibit 35** are true and correct copies of Plaintiff's First Set of Request for Production served on Defendant.

8
**DECLARATION OF BRENT H. BLAKELY**

46. Attached hereto and incorporated herein as **Exhibit 36** are true and correct copies of Plaintiff's First Set of Interrogatories served on Defendant.

47. On February 22, 2022, Walmart filed its Motion for Summary Judgment in this matter. ECF No. 54. As I set forth in Deckers' ex parte application to strike this Motion, Walmart never met and conferred in compliance with LR 7-3. ECF No. 55. Walmart's Motion for Summary Judgment was the first time in this litigation that Walmart ever mentioned an affirmative defense of obviousness (or anticipation or inequitable conduct for that matter). Indeed, I'm almost certain that this was the first time the word "obviousness" appears in any document connected to this case.

48. I have litigated approximately 100 design patent cases in this Court. Invalidity defenses (e.g., obviousness, anticipation, inequitable conduct) are affirmative defenses that are required to be raised in Defendant's Answer. There is a reason for this – the law looks in disfavor on invalidating patents which is why the standard is clear and convincing evidence. Therefore, courts like the Northern District of California typically create special rules concerning patent cases. If a defendant is going to argue patent invalidity, it needs to do so at the outset of the case and make its reasons crystal clear. When a defendant raises an invalidity as an affirmative defense in its answer or crossclaim, the first thing we do is retain an expert on the issue. This way the expert can help guide us through the Markman process and assist in developing discovery. Importantly, it also gives the expert time to do his/her own research and draft a robust expert report on the issues in play, which typically takes months.

49. None of this happened in the present case. After having not plead obviousness as an affirmative defense or providing any discovery on this issue during fact discovery, Walmart raised an obviousness defense for the first time in its Motion for Summary Judgment premised upon a handful of unauthenticated website screenshots Walmart produced after the discovery cutoff. This prevented Deckers from conducting any fact discovery as to the authenticity of the purported prior art

evidence, which, in my experience representing Deckers, appear to be nothing more than cheap knockoffs of the UGG Fluff Yeah Slide. Furthermore, it prevented Deckers from having enough time to retain a robust expert opinion on this issue of obviousness. I learned from Mr. Holden's deposition that he was hired on January 30, 2022 to provide a report on February 11, 2022. Indeed, from conversations with Walmart's counsel (and from a review of the report itself) it appears his report may have been ready by February 4, 2022. Unlike Walmart's counsel, even if an expert was available, I was not going to have that expert slap together a sloppy report on an issue as important as patent invalidity.

50. Accordingly, if this Court is going to allow Walmart to introduce a belated argument that the '941 Patent is invalid due to obviousness, pursuant to FRCP 56(d) Deckers respectfully requests that this Court allow Deckers to conduct discovery into the purported prior art, and allow Deckers the opportunity to provide an expert report on the issue of obviousness thereafter.

51. On or about September 24, 2020, I instructed my staff to purchase a Kendall + Kylie Shani slipper from www.walmart.com. Attached hereto and incorporated herein as **Exhibit 37** are photographs of the Kendall + Kylie Shani Slipper purchased by staff at Blakely Law Group on or about September 24, 2020 and accompanying proof of purchase. These slippers are currently in the custody of Blakely Law Group and were made available for inspection to Defendants' counsel. A physical sample of said slippers can be made available for inspection by the Court upon request.

52. On or about October 14, 2021, after discovering that Walmart was continuing to sell the Accused Product, I instructed my staff to purchase a Kendall + Kylie Shani slipper from www.walmart.com. Attached hereto and incorporated herein as **Exhibit 38** are photographs of the Kendall + Kylie Shani Slipper purchased by staff at Blakely Law Group on or about October 14, 2021 and accompanying proof of purchase. These slippers are currently in the custody of Blakely Law Group and were

made available for inspection to Defendants' counsel. A physical sample of said slippers can be made available for inspection by the Court upon request.

53. On or about November 30, 2021, I visited walmart.com and discovered that the Accused Products were still offered for sale on Walmart's website. Attached hereto and incorporated herein as **Exhibit 39** are November 30, 2021 printouts from walmart.com that show the Kendall + Kylie Shani Slipper for sale.

54. On or about December 20, 2021, I visited walmart.com and discovered that the Accused Products were still offered for sale on Walmart's website. Attached hereto and incorporated herein as **Exhibit 40** are December 20, 2021 printouts from walmart.com that show the Kendall + Kylie Shani Slipper for sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ____March 11,____, 2022 in Manhattan Beach, California.

/s/ Brent H. Blakely
_____
Brent H. Blakely