**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DECKERS OUTDOOR CORPORATION, a Delaware Corporation,

Plaintiffs,

v.

WALMART INC.; and DOES 1-10, inclusive

Defendants.

Case No. 2:20-cv-09521 FLA-E

**REPLY DECLARATION OF JOHN R. LANE IN SUPPORT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Hon. Fernando L. Aenlle-Rocha**

I, John R. Lane, declare as follows:

1. I am a partner with the law firm of GS2Law PLLC, of counsel to Defendant Walmart, Inc. in this action. I am *pro hac vice* admitted to appear before this Court in this matter. I am also an attorney duly licensed to practice before all courts of the State of New York and have been in private practice specializing in intellectual property cases, such as the patent and trade dress claims involved in the present case, for more than 30 years.
2. I submit this declaration to accompany Defendant's Reply ("Reply") in support of Defendant, Walmart, Inc.'s Motion for Summary Judgment [ECF No. 54] ("Motion"), in view of certain assertions made by Plaintiff in its Opposition to the Motion [ECF No. 64] ("Opposition") by Plaintiff, Deckers Outdoor Corporation's ("Deckers" or "Plaintiff").
3. Over my years of practice, I have appeared in cases across the country in multiple districts, including in previous cases before the Central District of California, as

well as the Northern and Southern Districts of California and many other U.S. district courts.

4. I have personal knowledge of the facts stated in this declaration and if called to testify, I could and would competently testify to those facts. I have only been counsel of record in the case since the latter part of fact discovery, as of December 2021 going forward through to expert discovery and have been primarily involved in preparing Defendant's expert case relating to the issues of non-infringement and invalidity of the Decker's U.S. Patent No. D866, 941 (the " '941 Design Patent").

5. Plaintiff has presented arguments and assertions in its Opposition (at 10-12) [ECF No. 64] that the basis of the prior art search performed under Defendant's instructions by Defendant's search agent Government Liaison Services ("GLS") are for unspecified reasons unreliable and should be excluded form consideration by the Court.

6. The parameters and results of the GLS search are shown in a letter from GLS dated January 26, 2022 with the search results (GLS Letter & Results), which are attached as Exhibit 3 [ECF No. 54-9] to the Declaration of Lenny Holden in Support of Defendant's SJ Motion [ECF 54-6] accompanying that Motion.

7. First, as a practicing intellectual property attorney, I and many of my colleagues at our firm have instructed GLS for scores of prior art patent searches as well as other trademark and trade dress related searches over the years and have found their methods and work product to be of the very highest quality and reliability.

Information about GLS and its services can be found at: https://www.trademarkinfo.com. In summary GLS has a long and distinguished history and was:

> "founded in Washington, D.C. in 1957 for the purpose of providing a 'Washington Office' to law firms and businesses that did not otherwise have access to Federal Government offices and the vast amount of information available therefrom. Today, GLS employs a large staff of experts trained in various areas including intellectual property research as well as federal food and beverage labeling and processing compliance. We serve our customers at many agencies including the U.S. Patent and Trademark Office, the Copyright Office, USDA, FDA, the Alcohol and Tobacco Tax and Trade Bureau (TTB), and the SEC. Our associates average experience exceeds 25 years.
>
> The clients of GLS number in the thousands and are comprised of law firms, sole practitioners, Fortune 500 companies as well as small businesses in the United States and 35 foreign countries."

[https://www.trademarkinfo.com/about-us/d]

8. Further Defendant also criticizes, without basis, the reliability of the GLS search results, particularly the several examples of prior art asserted against the validity and scope of the '941 Patent. Opp. at 10-12. In this regard, although due to company policy, the GLS search agent was not able to prepare and sign a sworn declaration, a supplemental letter from GLS provides additional information about the scope of the search and the specifies the databases from which the web-based prior art references were further obtained and included in the GLS letter and report. See March 15, 2022 GLS letter attached hereto as **Ex. A**.

9. Further, Defendant has pointed to no specific basis to doubt the authenticity or accuracy of the prior art results yielded from the GLS search. Opp. at 10-12 [ECF No. 64]. In fact Defendant made substantial efforts to provide Plaintiff with the GLS search report and results (on January 30, 2022), soon after the commencement of expert discovery (on January 17, 2022) and several weeks before the filing of Defendant's SJ Motion (on February 22, 2022) as part of the parties L-R 7.3 meet and confer process.

10. I made several attempts to engage Plaintiff's counsel Mr. Blakely in good faith communications regarding Defendant's then proposed Motion. During the course of related communications with Mr. Blakely over the expert discovery schedule, Defendant received as part of its expert evidence, the above referenced GLS prior art search results that yielded the multiple examples of prior sold and publicly available sandal designs that would almost certainly negatively effect the scope and validity of Deckers' '941 Design Patent. This evidence prompted Defendant to put Plaintiff on notice of its intention to file its SJ Motion and I so notified Mr. Blakely of this on January 25, 2022 specifying,

"pursuant to LR 7-3, Defendant is also putting Plaintiff on notice of its intention to file for summary judgment as to all claims asserted by Deckers in the complaint. Through its motion, Defendant will present quantitative and qualitative evidence demonstrating the clear invalidity of the Deckers '941 Design Patent asserted in this case, as well as an absolute absence of entitlement to any notion of trade dress rights to Deckers."

Ex. 10 to Garson Decl. at pp. 5-6 (1-25-22 Lane to Blakely email)[ECF No. 56-12].

11. After five days of total silence I found it necessary to again email Mr. Blakely, where I specified the substantive basis for Defendant's summary judgment motion in some detail and with that email attached and produced the GLS prior art search results Defendant intended to rely upon in its SJ Motion as follows:

> "We have heard nothing back from Deckers in response to Defendant's proposal below for avoiding the need to further litigate Deckers' claims through summary judgment or otherwise.
>
> In an effort to further advance our good faith meet & confer efforts regarding Defendant's anticipated summary judgment motion, we have attached Defendant's expert's preliminary search results, which we are hereby producing and which show prior art designs that clearly predate the filing of the Deckers '941 Design Patent by several years."

Ex. 10 to Garson Decl. at pp. 4-5 (1-30-22 Lane to Blakely email) [ECF No. 56-12].

12. After detailing specific items of the prior art produced, I urged Defendant to narrow its claims in light of this prior art to avoid wasting time and resources and avoid the need to litigate at least '941 Design Patent further and notifying Defendant in clear terms of its intention to proceed with its SJ Motion if we received no meaningful response from Plaintiff. *Id.*

13. In his response the next day, Mr. Blakely rejected Defendant's proposal to drop the claim and proposed no alternative or desire to discuss the matter further, but in recognizing that a summary judgment motion was forthcoming, concluded in

stating that, "We can also discuss extending the briefing schedule for any motions for summary judgment." *Id.* at p. 4.

14. The clear message sent by Mr. Blakely from my perspective was that Plaintiff had no interest in further discussing the merits of Defendant's SJ Motion or otherwise negotiating any issues relating to the Motion, but was expecting a motion in due course.

15. Further had Plaintiff wished to genuinely test the accuracy and veracity of the GLS search results, it had ample time, almost 2 months, during the expert discovery period, to subpoena GLS for a deposition or document production, but made no attempt to do so.

16. At the same time and in light of Mr. Blakely's 1/30 email response, Plaintiff expressed no interest in further discussing the issue and never suggested again that there was a need to further discuss the merits of a summary judgment motion by Defendant.

17. Further with respect to the quantitative and qualitative substance of the prior art that was disclosed to Plaintiff on 1/25, several weeks before Defendant's Motion was filed, in my many years in practicing patent law, I can only recall encountering such strong knock-out prior art evidence in perhaps 1 or 2 previous cases.

18. In this regard, Plaintiff also claims that Defendant has never pleaded or otherwise raised the issues of invalidity, such as lack of novelty or obviousness, of the Deckers '941 Patent in this action an assertion which Defendant strongly rejects.

19. First, the pleadings in this case, such as Defendant's Answer and Affirmative Defenses were prepared and filed by former litigation counsel for Walmart many months before our firm was retained to act in this case.

20. Further, the Answer and Affirmative Defenses that were filed on January 21, 2021 [ECF No. 20] very clearly assert the issue of invalidity of the '941 design Patent. First, in its Fifth Affirmative Defense, Walmart specifically asserted that: "Defendant has not infringed and is not infringing any ***valid*** claim of the '941 Patent. ECF No. 20 at p. 7, ll. 14-15 (emphasis added). This defense necessarily includes the prospect that Defendant would be and was entitled to challenge the validity of the '941 Patent. Second, the Defendant's prayer for relief also specifically requests the same relief, therefore indicating that validity would be part of Defendant's case. *Id.* at ll. 21-22.

21. Notwithstanding the relative strength of Defendant's pleadings, there is a clear interest both in established case law and public policy favoring a court's ability to make validity determinations to preclude the enforcement of clearly invalid patents as a matter of law.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:

New York, New York

March 18, 2022

***/s/John R. Lane***

John R. Lane