UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DECKERS OUTDOOR CORPORATION,

                              Plaintiff,

                v.

WAL-MART STORES, INC., *et al.*,

                              Defendants.

Case No. 2:20-cv-09521-FLA (Ex)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 54]**

Date:         February 20, 2024
Time:        1:30 p.m.
Courtroom:  6B

<u>**RULING**</u>

Before the court is Defendant Wal-Mart, Inc.'s ("Defendant" or "Wal-Mart," erroneously sued as Wal-Mart Stores, Inc.) Motion for Summary Judgment ("Motion"). Dkt. 54 ("Mot.").[1] Plaintiff Deckers Outdoor Corporation ("Plaintiff") or "Deckers") opposes the Motion and also requests the court enter summary judgment in its favor. Dkt. 64 ("Opp'n"). This matter came to hearing on February 20, 2024. / / /

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers listed on documents natively.

1

For the reasons stated herein, the court GRANTS in part the Motion and partial summary judgment in Defendant's favor as to the portions of the third and fourth causes of action based on Plaintiff's design patent infringement claim.  The Motion is DENIED in part (1) with prejudice as to the first and second causes of action and the remaining portions of the third and fourth causes of action, and (2) without prejudice as to the fifth cause of action for infringement of U.S. Patent No. D866,941 S (the "D941 Patent").  Plaintiff's request for summary judgment (Opp'n at 25) is DENIED.

The court additionally: (1) GRANTS Plaintiff leave to file a First Amended Complaint ("FAC"); (2) GRANTS Defendant leave to plead additional affirmative defenses in its Answer to the FAC; (3) REOPENS in part fact and expert discovery as to Plaintiff's fifth cause of action for design patent infringement and Defendant's affirmative defenses thereto; (4) ORDERS the parties to file a joint statement regarding claim construction; and (5) SETS additional deadlines as detailed below.

## BACKGROUND

On October 16, 2020, Plaintiff filed the Complaint in this action, asserting five causes of action against Wal-Mart for: (1) trade dress infringement in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; (2) trade dress infringement in violation of California common law; (3) unfair competition in violation of California Business and Professions Code § 17200, *et seq.* (the California Unfair Competition Law, "UCL"); (4) unfair competition in violation of California common law; and (5) infringement of the D941 Patent.  Dkt. 1 ("Compl.").  Plaintiff claims Defendant designs, manufactures, imports, distributes, advertises, markets, offers for sale, and sells footwear products that infringe upon Deckers' claimed "Fluff Yeah Trade Dress" and the D941 Patent.  *Id.* at 12.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment."  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

"A moving party without the ultimate burden of persuasion at trial … has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Id.*  "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  *Id.*  "If … a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Id.* at 1103.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Inferences may be drawn from

underlying facts that are either not in dispute or that may be resolved at trial in favor

of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise

permissible under the governing substantive law. *Id.* The court must view all

evidence and justifiable inferences "in the light most favorable to the nonmoving

party." *Id.* at 630–31. However, a party cannot defeat summary judgment based

solely on the allegations or denials of the pleadings, conclusory statements, or

unsupported conjecture. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112

(9th Cir. 2003); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171

(9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any

supporting evidence, is insufficient to create a genuine issue of material fact.").

## II.    Plaintiff's Failure to Accuse Any Specific Product in the Complaint

As an initial matter, the court notes the Complaint does not accuse or identify

any specific product(s) as infringing Deckers' claimed "Fluff Yeah Trade Dress" or

the D941 Patent. *See* Compl. ¶ 12 (accusing only "certain footwear products").

Defendant's first affirmative defense pleads "Plaintiff's Complaint fails to state a

claim against Defendant upon which relief may be granted, including, without

limitation because it fails to identify any particular products as Accused Products."

Dkt. 20 at 7. Plaintiff did not amend the Complaint to name a specific product, and

the deadline to amend the pleadings expired on August 27, 2021. Dkt. 29.

In its Opposition, Plaintiff identifies a product it calls the "Kendall + Kylie

Shani Slipper" as the "Accused Product." Opp'n at 11. Defendant refers to this

product as the "KK Sandal," an image of which is reproduced below:



Mot. at 29.

/ / /

In the Ninth Circuit, "when issues are raised in opposition to a motion [for] summary judgment that are outside the scope of the complaint, the district court should … construe[] the matter raised as a request pursuant to rule 15(b) of the Federal Rules of Civil Procedure ['Rule 15(b)'] to amend the pleadings out of time." *Desertrain v. City of Los Angeles*¸ 754 F.3d 1147, 1154 (9th Cir. 2014) (internal brackets and quotation marks omitted).

As Defendant did not move for summary judgment based on Plaintiff's failure to identify specifically an accused product in the Complaint, the court will exercise its discretion to consider Plaintiff's Opposition an untimely request to amend the pleadings, pursuant to Rule 15(b), and accept the KK Sandal as the product accused. *See Desertrain*, 754 F.3d at 1154.[2]  Plaintiff is granted leave to file, on or before April 19, 2024, a FAC that identifies the KK Sandal as the product accused.  Defendant's Answer to the FAC shall be due on or before May 3, 2024.

## III.    Analysis

### A.    Fifth Cause of Action for Infringement of the D941 Patent

Pursuant to 35 U.S.C. § 171, an inventor may obtain a design patent for "any new, original and ornamental design for an article of manufacture…."  "[F]or a design patent to be valid, it must be: (1) new, (2) original, (3) ornamental, (4) non-obvious to a person of ordinary skill in the art, and (5) not primarily for the purpose of serving a functional or utilitarian purpose."  *Barofsky v. Gen. Elec. Corp.*, 396 F.2d 340, 342 (9th Cir. 1968).  "Determining whether a design patent has been infringed is a two-

---

[2] At the hearing, Plaintiff argued it was unaware of any legal authority that required it to identify the accused product in the Complaint.  To state a plausible patent, trademark, or related unfair competition claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), a plaintiff must identify and accuse a specific product by the defendant and cannot simply plead, on information and belief, that some unidentified product by the defendant may infringe in an unspecified manner.  *See also* Fed. R. Civ. P. 11(b).  Plaintiff's argument lacks merit.

1  part test: (1) the court first construes the claim to determine its meaning and scope; (2)

2  the fact finder then compares the properly construed claim to the accused design."

3  *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020).

4  **1.    Claim Construction**

5  "[T]rial courts have a duty to conduct claim construction in design patent cases,

6  as in utility patent cases…." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679

7  (Fed. Cir. 2008). "[D]esign patents typically are claimed as shown in drawings," but

8  the Federal Circuit has recognized "it can be helpful [for trial courts] to distinguish

9  between those features of the claimed design that are ornamental and those that are

10  purely functional." *Lanard Toys*, 958 F.3d at 1342 (internal quotation marks and

11  brackets omitted). "[W]here a design contains both functional and non-functional

12  elements, the scope of the claim must be construed in order to identify the non-

13  functional aspects of the design as shown in the patent." *Id.* (quotation marks and

14  citations omitted). "[T]he construction of a patent, including terms of art within its

15  claim, is exclusively within the province of the court." *Herbert Markman and*

16  *Positek, Inc. v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).

17  The D941 Patent claims: "The ornamental design for a footwear upper and

18  midsole, as shown and described." Compl. at 16. The specification does not include a

19  written description of the claimed design. *See id.* Representative illustrations of the

20  patent are reproduced below, with broken lines representing portions of the drawings

21  that form no part of the claimed design.



FIG. 1    FIG. 2




FIG. 4                    FIG. 5

*Id.* at 17–18.

At the hearing, the parties agreed the D941 Patent should be construed based solely on the drawings presented in the patent and that there was no need for a *Markman* hearing.  The parties, however, have not presented sufficient information or evidence for the court to determine which elements of the design are functional, as required for the court to construe the D941 Patent.  While Defendant argues correctly that functional elements must be excluded from claim construction, Defendant does not identify clearly the elements it believes to be functional, with supporting arguments and evidence.  *See* Mot. at 29.  Plaintiff likewise does not discuss functionality in connection with the D941 Patent at all.  *See* Opp'n at 12–21.

The court finds it lacks sufficient information to construe the D941 Patent and ORDERS the parties to (1) exchange infringement and non-infringement contentions, and (2) submit a joint brief stating their positions regarding claim construction, as detailed in the Conclusion of this Order below.

### 2. Obviousness

"Summary judgment of obviousness is appropriate if the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *Id.* (quotation marks omitted).  "Design patents are presumed valid and, thus, a moving party seeking to invalidate a design patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no

1    reasonable jury could find otherwise." *Spigen Korea Co. v. Ultraproof, Inc.*, 955 F.3d

2    1379, 1383 (Fed. Cir. 2020).  "For design patents, the ultimate inquiry for obviousness

3    is whether the claimed design would have been obvious to a designer of ordinary skill

4    who designs articles of the type involved."  *Id.* (quotation marks omitted).  "This

5    inquiry is a question of law based on underlying factual findings."  *Id.*

6        Defendant contends the D941 Patent is rendered obvious based on prior art

7    products that share the same overall design characteristics and were offered for sale

8    prior to the filing date of the D941 Patent.  Mot at 25–28.  Plaintiff responds

9    Defendant cannot argue invalidity due to obviousness because Defendant failed to

10   plead such an affirmative defense.  Opp'n at 14 (citing *e.g.*, *Eli Lilly & Co. v. Barr*

11   *Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001)).[3]  Plaintiff additionally argues

12   Defendant's purported evidence of prior art is barred by Fed. R. Civ. P. 37, because

13   this evidence was first disclosed by Defendant two weeks after fact discovery closed

14   on January 14, 2022.  Opp'n at 11–12, 15.

15   / / /

16   _____

17   [3] Plaintiff cites *Kandypens, Inc. v. Puff Corp.*, Case No. 2:20-cv-00358-GW (KSx),
     2020 U.S. Dist. LEXIS 259022, at *5 (C.D. Cal. Sept. 20, 2020), to argue "[p]atent
18   invalidity contentions require parties to crystallize their theories of the case early in
     the litigation and to adhere to those theories once they have been disclosed."  Opp'n at
19   14.  The full passage cited states: "Invalidity and infringement contentions require
     parties to crystallize their theories of the case early in the litigation and to adhere to
20   those theories once they have been disclosed."  *Kandypens*, 2020 U.S. Dist. LEXIS
     259022, at *5 (quotation marks omitted).  *Kandypens* involved utility patents, where
21   the court adopted portions of the Northern District of California Patent Local Rules
     and set dates for infringement and invalidity contentions in its scheduling order.  *See*
22   Case No. 2:20-cv-00358-GW (KSx), Dkt. 28.  This court has done neither here.
23   Furthermore, Plaintiff does not establish it served infringement contentions on
     Defendant—as required before invalidity contentions are due under Northern District
24   of California Patent Local Rule 3-3—or otherwise "crystallized" its theory of
     infringement by identifying the specific ornamental, non-functional elements of the
25   D941 Patent it believes were infringed.  Plaintiff, thus, fails to establish Defendant
26   was required to "crystallize" its theory of the case early in the litigation through
27   invalidity contentions, as Plaintiff contends.

28

As the court has granted Plaintiff leave to amend the Complaint to identify the KK Sandal as the product accused, the court also GRANTS Defendant leave to include, in its Answer to the FAC, affirmative defenses of patent invalidity due to obviousness and anticipation based on prior art.  The court REOPENS in part fact and expert discovery, limited solely to discovery regarding Plaintiff's fifth cause of action for infringement of the D941 Patent and Defendant's affirmative defenses thereto, including Defendant's arguments regarding invalidity due to obviousness or anticipation based on prior art.

### 3. Infringement

Defendant moves for summary judgment on the fifth cause of action, arguing that once functional elements are removed from the analysis, the ornamental portions of the KK Sandal do not infringe the remaining ornamental design elements of the D941 Patent.  Mot. at 28–28.  Plaintiff contends Defendant's infringement of the D941 Patent is blatant when the KK Sandal is compared to the design patent as a whole.  Opp'n at 20–21.

In *Gorham Co. v. White*, 81 U.S. 511, 528 (1871), the Supreme Court established the "ordinary observer" test for determining design patent infringement,[4] which provides:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, [and] if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

"Under that test, … infringement will not be found unless the accused article embodies the patented design or any colorable imitation thereof." *Egyptian Goddess*, 543 F.3d at 678 (quotation marks and brackets omitted).  This test must be applied

---

[4] The Federal Circuit held in *Egyptian Goddess*, 543 F.3d at 670, that the "ordinary observer" test is the sole test for determining whether a design patent has been infringed.

"through the eyes of an observer familiar with the prior art." *Id.* at 677.  As the Federal Circuit explained:

> An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design.  If the claimed design consists of a combination of old features that creates an appearance deceptively similar to the accused design, even to an observer familiar with similar prior art designs, a finding of infringement would be justified.  Otherwise, infringement would not be found.

*Id.* at 677–78.

As the court has determined it cannot construe the D941 Patent based on the information presented, ordered further briefing regarding which elements of the claimed design are functional, and reopened discovery regarding the D941 Patent and Defendant's affirmative defenses, the court DENIES without prejudice the parties' requests for summary judgment on the issue of infringement.

### 4.    Conclusion on Fifth Cause of Action

For these reasons, the court DENIES in part the Motion and the parties' requests for summary judgment on Plaintiff's fifth cause of action, without prejudice.

### B.    First and Second Causes of Action for Trade Dress Infringement

Plaintiff contends the KK Sandal infringes its unregistered trade dress in the UGG® Fluff Yeah Slide (the "Fluff Yeah Trade Dress"), which Deckers claims is comprised of the following elements:

    a. A slipper and sandal combined into a statement shoe made famous by the UGG® brand;

    b. A platform, sling back slide;

    c. A platform sole with a furry footbed and furry perimeter sides;

    d. A wide vamp having a furry exterior;

    e. An open toe; and

    f. An elastic heel strap extending from one side of the vamp to the other.

Compl. ¶ 20.  Plaintiff includes three examples of the claimed Fluff Yeah Trade Dress
in the Complaint:



*Id.* ¶ 21.  The Fluff Yeah Trade Dress has not been registered with the United States
Patent and Trademark Office.  *See* Opp'n at 21.

"It is well established that trade dress can be protected under federal law."
*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001).  "The design or
packaging of a product may acquire a distinctiveness which serves to identify the
product with its manufacturer or source; and a design or package which acquires this
secondary meaning, assuming other requisites are met, is a trade dress which may not
be used in a manner likely to cause confusion as to the origin, sponsorship, or
approval of the goods."  *Id.*  "[T]rade dress protection may not be claimed for product
features that are functional," and "'the person who asserts trade dress protection has
the burden [at trial] of proving that the matter sought to be protected is not
functional.'"  *Id.* at 29 (quoting 15 U.S.C. § 1125(a)(3) (1994 ed., Supp. V)).

The Supreme Court has cautioned against misuse or over-extension of trade
dress, as "'product design almost invariably serves purposes other than source
identification.'"  *TrafFix*, 532 U.S. at 29 (citing *Wal-Mart Stores v. Samara Bros.*, 529
U.S. 205, 213 (2000)).  As the Court explained:

> Trade dress protection must subsist with the recognition that in many
> instances there is no prohibition against copying goods and products.
> In general, unless an intellectual property right such as a patent or
> copyright protects an item, it will be subject to copying.  As the Court
> has explained, copying is not always discouraged or disfavored by the
> laws which preserve our competitive economy.  Allowing competitors
> to copy will have salutary effects in many instances.  Reverse

engineering of chemical and mechanical articles in the public domain
often leads to significant advances in technology.

*Id.* (citations and quotation marks omitted).

To prove infringement of an unregistered trade dress based on product design, "a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009); *see also Samara Bros.*, 529 U.S. at 216. "As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis." *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004).

### 1. Functionality

"[F]or a product's design to be protected under trademark law, the design must be nonfunctional." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 864 (9th Cir. 2020).[5] There are two types of functionality, each with its own legal test: "utilitarian functionality," which relates to the performance of the product in its intended purpose (i.e., "how well the product works"), and "aesthetic functionality," which is based on intrinsic aesthetic appeal (i.e., "how good the product looks"). *Id.* at 865 (citing *TrafFix*, 532 U.S. at 32–33). "If the claimed trade dress has either type of functionality, it is unprotectable." *Id.*

---

[5] As the Supreme Court explained in *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995), "[i]t is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time…." "The nonfunctionality requirement stops individual sellers from permanently monopolizing 'functional' designs that they have not patented, or for which patents have expired." *Blumenthal*, 963 F.3d at 864. "This requirement makes it very difficult for sellers to use trademark rights to monopolize designs of products." *Id.* "Allowing competitors to copy such designs has 'salutary effects' for consumers," as "[a] competitor who copies a product might manufacture and distribute it more efficiently, lower its price, and make it easier for consumers to buy." *Id.* at 864–65.

"A claimed trade dress has utilitarian functionality if it is essential to the use or purpose of a product or affects its cost or quality." *Id.* Courts apply the following four-factor test to determine whether a claimed trade dress has utilitarian functionality: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Id.* (citing *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998)). "No one factor is dispositive; all should be weighed collectively." *Id.*

"A claimed trade dress has aesthetic functionality if it serves an aesthetic purpose wholly independent of any source identifying function, such that the trade dress's protection under trademark law would impose a significant non-reputation-related competitive disadvantage on its owner's competitors." *Id.* (quotation marks omitted). "This requirement aims to ensure that trademark law protects fair competition between sellers, and does not sanction sellers' poaching their competitors' superior reputations." *Id.* "Thus, the inquiry is whether, if one seller were given exclusive rights to use the claimed trade dress, other sellers would be forced to use alternative designs that make their products more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source (e.g., the alternative designs would not have as much intrinsic aesthetic appeal)." *Id.* "If such competitive disadvantages would be significant, then this second requirement for aesthetic functionality is satisfied." *Id.*

Here, the parties agree the proper inquiry regarding functionality is to look to the overall visual impression of the elements taken in combination. Mot. at 32; Opp'n at 25. "A plaintiff may define its claimed trade dress as the 'overall appearance' of its product." *Id.* "In principle, such claimed trade dresses are subject to the tests for utilitarian and aesthetic functionality, just like any other claimed trade dresses." *Id.* at 865–66. "However, when the claimed trade dress is an 'overall appearance,' these

tests must be applied with extra care to prevent 'semantic trickery' from obscuring the functionality of the design the plaintiff seeks to monopolize." *Id.* at 866. "For example, if a particular combination of functional features is itself functional, referring to that layout of features as the 'overall appearance' of a product does not render it nonfunctional." *Id.*

Defendant contends the claimed Fluff Yeah Trade Dress is entirely functional, as "all the UGG Fluff Yeah components function to fit securely on the wearer's foot and provide comfort and warmth," and "the furry components of the UGG Fluff Yeah Sandal, such as the vamp and midsole[,] … are designed to provide comfort and warmth to the feet of the wearer." Mot. at 32. Defendant, however, does not discuss (1) the second, third, and fourth factors of the *Disc Golf* test for utilitarian functionality, or (2) aesthetic functionality. Defendant, thus, fails to establish any element of the claimed Fluff Yeah Trade Dress is functional under trade dress law, and the court DENIES in part the Motion on this basis. *See Nissan Fire*, 210 F.3d at 1102.

Plaintiff, in turn, argues the claimed Fluff Yeah Trade Dress is not functional because: (1) it does not provide a utilitarian advantage over other slide designs in the market; (2) many alternative designs exist; (3) the design of the Fluff Yeah Slide does not result from an inexpensive method of manufacturing; and (4) there are many slides in the marketplace that may serve the same functions as the Fluff Yeah Slide. Opp'n at 25 (citing Dkt. 31 (Pl. Statement of Genuine Issues of Material Fact, "PSGI") ¶ 31). Plaintiff's arguments are not supported by the evidence cited. *See* PSGI ¶ 31 (stating only the elements of the claimed Fluff Yeah Trade Dress alleged in paragraph 20 of the Complaint).[6] The court, therefore, also DENIES Plaintiff's request for summary judgment on this issue.

---

[6] To the extent Plaintiff contends its arguments are supported by the citations included in PSGI ¶ 31, the court reminds each party that it bears the burden of submitting the

### 2.   Secondary Meaning

"[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Samara Bros.*, 529 U.S. at 216.  "[S]econdary meaning … occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Id.* at 211 (internal brackets and quotation marks omitted).  "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F. 3d 1138, 1145 (9th Cir. 2009) (quotation marks omitted). "To show secondary meaning, a plaintiff must demonstrate a mental recognition in buyers' and potential buyers' minds that products connected with the mark are associated with the same source." *Id.* (quotation marks and brackets omitted).

### a.   Survey Evidence

"In trademark cases, surveys are to be admitted as long as they are conducted according to accepted principles and are relevant." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  Pursuant to Fed. R. Civ. P. 702, a trial court "must ensure

---

evidence that supports its arguments clearly.  *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) ("[T]he district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein.  …  A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read.  It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence."); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("'[J]udges are not like pigs, hunting for truffles buried in briefs.'") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *Nissan Fire & Marine*, 210 F.3d at 1102 ("A moving party … has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.").

that any and all [expert] testimony and evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–90 (1993).

Defendant submits a declaration by its retained expert, Dr. David T. Neal ("Neal"), as evidence the Fluff Yeah Trade Dress lacks secondary meaning. Dkt. 54-5 ("Neal Decl."). Neal attests to his experience in conducting consumer studies and states he fielded a survey between January 21 and 27, 2022, of "302 likely female purchasers of slippers, sandals, or slides priced at $80.00 or more in the United States." *Id.* ¶¶ 2–3. According to Neal, his survey found 29.1% of respondents associated a test cell (an image of Plaintiff's product without the logo) with one company or brand, whereas 19.2% of respondents associated a control cell (an image of a closed-toed fuzzy slipper with a rear strap) with one company or brand, resulting in a net secondary meaning of 9.9% of relevant consumers. *Id.* ¶ 26. This evidence is sufficient for Defendant to meet its initial burden to establish lack of secondary meaning.[7]

Plaintiff presents a declaration and expert report by its retained expert, Matthew G. Ezell ("Ezell"), as evidence the claimed Fluff Yeah Trade Dress has a high consumer recognition rate and has acquired secondary meaning. Dkt. 64-6 ("Ezell Decl."). Ezell attests to his experience in designing and executing surveys related to intellectual property matters and states he conducted a survey of 400 "females 18 years of age or over who have either purchased a pair of slippers costing

---

[7] Plaintiff objects to Neal's expert report and testimony, arguing the survey was methodologically flawed because both the test and control images included the same strap as the Fluff Yeah Slide (without the UGG logo). Dkt. 64-2 (Pl. Evid. Objs.) at 30–33. Plaintiff did not submit a rebuttal expert report or expert testimony regarding Neal's survey or methodology. *See id.* Plaintiff, likewise, did not present evidence to establish the strap, alone, has acquired secondary meaning, such that its inclusion on any control cell slipper renders a survey fundamentally flawed and unreliable. Defendant's non-expert, lay belief that Neal's survey is "fundamentally flawed" for this reason is unsupported by evidence and entirely speculative. Accordingly, Plaintiff's objection is OVERRULED.

approximately $50 or more in the past 6 months, or are likely to purchase a pair of slippers costing approximately $50 or more in the next 6 months….” *Id.* ¶¶ 2–6, 20–26.  According to Ezell, his consumer survey found 45% of relevant consumers associated a substantially identical test cell with UGG or one brand, while only 6% of relevant consumers associated a control cell (an image of an open-toed fuzzy slipper without a rear strap) with UGG or a single source.  *Id.* ¶¶ 16–17.

Defendant contends Ezell's survey “is far from probative as it suffers from a number of fatal flaws as demonstrated by the rebuttal report of Dr. David Neal dated February 25, 2022.”  Dkt. 65 (“Reply”) at 15 (citing Dkt. 65-11 at 157–74 (Def. Ex. 19, “Neal Rebuttal Report”)).  The court agrees with Defendant.  Plaintiff identified the claimed Fluff Yeah Trade Dress as comprised of elements including: “(a) A slipper and sandal combined into a statement shoe made famous by the UGG® brand;” and “(b) A platform, sling back slide[.]”  Compl. ¶ 20.  Ezell, however conducted a survey of “females 18 years of age or over who have either purchased a pair of slippers costing approximately $50 or more in the past 6 months, or are likely to purchase a pair of slippers costing approximately $50 or more in the next 6 months[.]”  Ezell Decl. ¶ 6.  According to Neal, Ezell's focus on “slippers” resulted in an artificially inflated net secondary meaning for the Fluff Yeah Slide, as Ezell recruited respondents solely from the subset of the relevant consumer market where the UGG brand is strongest.  Rebuttal Report at 165 & n. 10, 166–68 ¶ 2.3.

Plaintiff does not present any evidence: (1) Ezell included purchasers or intended purchasers of sandals or slides within his survey; (2) the relevant consumer markets for sandals, slippers, or slides are one and the same; or (3) that consumers in the relevant market and the respondents considered the terms sandals, slippers, and slides to be interchangeable.  Plaintiff also has not established Ezell has any relevant knowledge, experience, or expertise regarding footwear to appreciate the differences between these products and consumer markets—or even know if there is a difference.  *See* Ezell Decl. at 14–15 (summarizing qualifications which do not include any

experience related to footwear). At the hearing, Plaintiff did not answer the court's question regarding this issue, beyond stating: "These are slippers. That's what we call them. That's what they are." Plaintiff's contention, through counsel, that these terms are substantially identical does not constitute competent evidence of this assertion. The court, therefore, DISREGARDS and STRIKES the Ezell consumer survey as methodologically flawed. *See Daubert*, 509 U.S. at 589–90.

Accordingly, the court finds Neal's testimony and expert report stand as unrebutted survey evidence of lack of secondary meaning.

### b. Plaintiff's Advertising and Sales

Plaintiff contends it has spent significant amounts in promoting, advertising, and marketing the "Fluff" franchise, and sold significant numbers of the Fluff Yeah Slide. Opp'n at 24.[8] According to Plaintiff, during the relevant period, the Fluff Yeah Slide accounted for almost 9% of total sandal sales in the United States and 22% of sandals sold for over $75. *Id.* (citing PSGI ¶ 89). Plaintiff further argues that the strong secondary meaning of the claimed Fluff Yeah Trade Dress is demonstrated by the extensive celebrity and social media coverage the product received. *Id.* (citing PSGI ¶ 39).

It is unclear from the evidence presented what portion of these sales reflect advertising and sales related to the Fluff Yeah Slide, rather than for other products in the "Fluff" franchise. *See id.* Furthermore, it is unclear what percentage of the total consumer market for sandals, slippers, and slides during the relevant period consisted of sales of the Fluff Yeah Slide.[9] Nevertheless, as it is possible Plaintiff could present

---

[8] Plaintiff identifies specific advertising and sales figures in the sealed and unredacted versions of its Opposition and supporting evidence. Dkt. 68-4 (sealed Opp'n) at 24.

[9] Plaintiff's evidence regarding sales and advertising regarding the entire "Fluff" franchise and the consumer market for sandals alone is not sufficient to establish the Fluff Yeah Slide acquired secondary meaning in the consumer market for sandals, slippers, and slides.

this evidence at trial, in an admissible form from which a reasonable jury could find the claimed Fluff Yeah Trade Dress acquired secondary meaning in the relevant market, the court finds genuine disputes exist that prevent summary judgment on this issue.[10]

### c.   Evidence of Copying

Plaintiff cites cases including *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426, 428 (9th Cir. 1979), and *Audio Fidelity, Inc. v. High Fidelity Records, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960), to argue that "deliberate and close copying of Deckers' trade dress, alone, is sufficient to establish secondary meaning in the Plaintiff's trade dress." Opp'n at 23. Plaintiff's cited opinions predate *Blumenthal*, *Samara Bros.*, and *TrafFix* by decades, and involved trade dress claims based on packaging—not product design. *See Faberge*, 605 F.2d at 428 (finding defendant's intentional simulation of packaging for shaving lotion evidenced secondary meaning); *Audio Fidelity*, 283 F.2d at 558 (same regarding packaging of a phonograph record).

Since Plaintiff's cited cases were decided, both the Supreme Court and Ninth Circuit have recognized that product design serves purposes other than source identification and is entitled to less protection than packaging. *Samara Bros.*, 529 U.S. at 212–13 (holding product design, unlike packaging, is not inherently distinctive and that "[c]onsumers are aware of the reality that, almost invariably, even the most unusual of product designs … is intended not to identify the source, but to render the product itself more useful or more appealing"); *TrafFix*, 532 U.S. at 29 ("[C]opying is not always discouraged or disfavored by the laws which preserve our competitive economy."). As the Supreme Court recognized in *Samara Bros.*, 529 U.S. at 213, a

---

[10] On a motion for summary judgment, the court is concerned only with the admissibility of the relevant <u>facts</u> at trial, and not the <u>form</u> of these facts as presented in the motions. *See Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

"[c]onsumer should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves" through abuse of trade dress law.  Accordingly, evidence of copying is relevant only if probative of an accused infringer's efforts to poach its competitor's superior reputation, rather than to copy a superior or more aesthetically appealing design.

Plaintiff includes in its opposition an image of an e-mail Plaintiff contends demonstrates Defendant's intent to copy the Fluff Yeah Slide.  Opp'n at 7.  Plaintiff, however, does not identify where in the record this e-mail may be found and, therefore, fails to establish its admissibility.  *See Carmen*, 237 F.3d at 1030.  Even if the court were to assume *arguendo* the e-mail is included within the 50+ exhibits Plaintiff submitted, a reasonable jury could find from its contents that the e-mail evidences only Defendant's efforts to copy unprotected, functional elements of the Fluff Yeah Slide, rather than to poach Plaintiff's superior reputation.  *See id.* ("Elastic is too short and isn't very stretchy, giving more tension and pulling foot forward [¶] Compared to UGG style where strap isn't as tight, see picture below for reference").

Accordingly, the court finds Plaintiff's assertion that Wal-Mart copied the design of the Fluff Yeah Sandal intentionally is insufficient to establish the non-existence of a genuine dispute regarding secondary meaning.

### d.    Conclusion on Secondary Meaning

In sum, the court finds a genuine dispute exists whether the Fluff Yeah Trade Dress has obtained secondary meaning.  The court, therefore, DENIES the parties' requests for summary judgment on this basis.  Having found genuine disputes exist regarding secondary meaning, the court need not address the parties' remaining arguments on this issue.

### 3.    Likelihood of Confusion

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d

1127, 1129 (9th Cir. 1998).  In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), the Ninth Circuit identified eight factors to facilitate this inquiry: "(1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of sight, sound and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and (8) likelihood of expansion."  These factors should not be weighed rigidly.  *Dreamwerks*, 142 F.3d at 1129.  "Rather, the factors are intended to guide the court in assessing the basic question of likelihood of confusion."  *Id.* (quotation marks and citation omitted).

Defendant contends there can be no likelihood of confusion between the Fluff Yeah Trade Dress and the KK Sandal, because the latter prominently and conspicuously displays the "KENDALL + KYLIE" mark on the band.  Mot. at 20–21 (citing *e.g.*, *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1133 (Fed. Cir. 1993)), 32.  In *L.A. Gear*, 988 F.2d at 1132–34, the Federal Circuit held that the conspicuous placement of well-known trademarks, combined with other factors, established that purchasers of the accused shoes would be likely to be confused, deceived, or believe mistakenly they were buying the plaintiff's shoes.  *L.A. Gear*, however, does not stand for the proposition that the prominent inclusion of a trademark, alone, is sufficient to establish there can be no likelihood of confusion as a matter of law.  Defendant also does not discuss any of the *Sleekcraft* factors in connection with its arguments regarding likelihood of confusion.  *See* Mot. at 32–33.  Defendant, thus, fails to establish it is entitled to summary judgment on this issue.

Plaintiff, in turn, argues there is a strong likelihood of confusion under the *Sleekcraft* factors.  Opp'n at 26–31.  After reviewing the evidence and arguments presented, the court finds genuine disputes exist regarding the likelihood of confusion.  For example, while Plaintiff contends the evidence shows Defendant intentionally copied the Fluff Yeah Slide, a reasonable jury could find that Defendant intended to copy only functional, non-protected elements and not to confuse or deceive consumers regarding the origin of the KK Sandal.  A reasonable jury also could find the KK

21

Sandal and Fluff Yeah Slide are of different product categories and not intended for the same types of consumers, because the Fluff Yeah Slide has a rubber outsole, suitable and intended for outdoor use, whereas the outsole of the KK Sandal is made of a softer, faux-fur material that is intended solely for indoor use.  The court, therefore, DENIES the parties' requests for summary judgment on this issue.

### 4.    Conclusion on Trade Dress Claims

In sum, the court DENIES in part the Motion and DENIES the parties' requests for summary judgment on Plaintiff's first and second causes of action for trade dress infringement under the Lanham Act and California common law, as genuine disputes of material fact exist that must be resolved by a jury.

### C.    Third and Fourth Causes of Action for Unfair Competition

Defendant moves for summary judgment as to the third cause of action for violation of the UCL and the fourth cause of action for unfair competition under California common law, on the grounds that these claims are preempted by federal patent and trademark law because they are qualitatively the same as Plaintiff's first, second, and fifth causes of action.  Mot. at 33 (citing *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, Case No 2:15-cv-00769-PSG (SSx), 2015 WL 12731929, at *7 (C.D. Cal. May 8, 2015)).  Plaintiff did not respond to this argument.  *See* Opp'n.[11]

The UCL prohibits persons and businesses from engaging in unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §§ 17200–17203.  "By proscribing 'any unlawful' business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quotation

---

[11] In the Opposition, Plaintiff contends its state law claims for trade dress infringement are not preempted by federal law.  Opp'n at 31.  Defendant, however, did not argue those claims were preempted.  *See* Mot. at 33.  Plaintiff does not discuss its unfair competition claims.  *See* Opp'n.

marks omitted).  "The common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another, or acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market."  *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1147 (9th Cir. 1997) (quotation marks, brackets, and ellipses omitted).

"The Patent Act preempts unfair competition claims unless the state law claim contains an element not shared by the federal law; an element which changes the nature of the action so that it is *qualitatively* different from a … patent infringement claim."  *Fortune Dynamic*, 2015 WL 12731929, at *7 (italics in original, internal brackets and quotation marks omitted) (quoting *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc*., 7 F.3d 1434, 1439–40 (9th Cir. 1993)).  "Thus, to avoid preemption, the state law claim must require proof of an element not shared by the federal law.'  *Id.* (quotation marks omitted)."

Plaintiff did not respond to this argument or identify any elements of its unfair competition claims that are not shared by Plaintiff's design patent infringement claim. *See* Opp'n.  The court, therefore, finds Plaintiff's claims for unfair competition based on infringement of the D941 Patent are preempted by federal law, and ENTERS partial summary judgment in Defendant's favor on the portions of the third and fourth causes of action based on infringement of the D941 Patent.

In contrast, "the Lanham Act does not preempt unfair competition claims." *Fortune Dynamic*, 2015 WL 12731929, at *7.  Defendant's argument regarding preemption based on the first cause of action, thus, fails.  The second cause of action is a state law claim for trade dress infringement under <u>California common law</u>, which cannot serve as the basis for preemption based on <u>federal law</u>.  The court, therefore, DENIES in part the Motion with respect the portions of the third and fourth causes of action based on Plaintiff's trade dress infringement claims.

/ / /

## CONCLUSION

For the reasons stated herein, the court GRANTS in part the Motion and partial summary judgment in Defendant's favor as to the portions of the third and fourth causes of action based on Plaintiff's design patent infringement claim.  The Motion is DENIED in part (1) with prejudice as to the first and second causes of action and the remaining portions of the third and fourth causes of action, and (2) without prejudice as to the fifth cause of action for infringement of the D941 Patent.  Plaintiff's request for summary judgment (Opp'n at 25) is DENIED.  All evidentiary objections not addressed specifically in this Order are OVERRULED without prejudice as moot.

The court additionally ORDERS the following:

1.  Plaintiff is granted leave to file on or before April 19, 2024, a FAC which identifies the KK Sandal as the product accused and conforms the pleading to this Order.  Plaintiff shall not amend the Complaint otherwise to add new claims, accused products, or allegations.  Failure to file a FAC timely may result in the dismissal of the action without prejudice.

2.  Defendant's Answer to the FAC shall be due on or before May 3, 2024, and may include affirmative defenses of patent invalidity due to obviousness and anticipation based on prior art.

3.  On or before May 17, 2024, Plaintiff shall serve Defendant with infringement contentions which set forth its theory of infringement of the D941 Patent, identifying specifically the aspects of the design that Plaintiff believes to be non-functional and ornamental and those it believes are purely functional (if any).  *See Lanard Toys*, 958 F.3d at 1342.

4.  Or before May 31, 2024, Defendant shall serve Plaintiff with non-infringement contentions which set forth the reasons Defendant believes the KK Sandal does not infringe the D941 Patent, identifying

specifically the aspects of the design Defendant believes to be purely
functional and those it believes are non-functional and ornamental (if
any).  *See Lanard Toys*, 958 F.3d at 1342.

5.    On or before June 14, 2024, the parties shall file with the court a joint
brief that states each party's position regarding claim construction for
the D941 Patent.

6.    On or before June 28, 2024, Defendant shall serve Plaintiff with
invalidity contentions regarding every prior art reference Defendant
believes invalidates the D941 Patent due to anticipation or obviousness.
Defendant shall comply with the requirements set forth in N.D. Cal.
Patent L.R. 3-3 & 3-4, as much as reasonably possible.

7.    On or before July 26, 2024, Plaintiff shall serve Defendant with validity
contentions which identify specifically why Plaintiff believes any prior
art references identified by Defendant do not render the D941 Patent
invalid.

8.    The court REOPENS fact and expert discovery as to the fifth cause of
action only, and SETS August 23, 2024, as the last date to hear motions
regarding such discovery.

9.    On or before August 30, 2024, Defendant may file a second motion for
partial summary judgment pursuant to Rule 56, limited to Plaintiff's
fifth cause of action, the D941 Patent, and any prior art references
Defendant disclosed in its invalidity contentions.  The memorandum in
support of the Motion shall not exceed 3,500 words, consistent with
Local Rule 11-6.1.  The caption of the motion should state that no
hearing date was set pursuant to the order of the court, and cite this
Order.

/ / /

/ / /

10. If Defendant files a second motion for summary judgment, Plaintiff's opposition shall be due on or before September 20, 2024, limited to the same topics as Defendant's Motion, and shall not exceed 3,500 words.

11. Defendant's reply in support of a second motion for summary judgment shall be due on or before September 27, 2024, and shall not exceed 1,500 words.

12. The second motion for summary judgment shall be taken under submission as of the date Defendant's reply is filed, and the court will set a hearing on the motion if the court deems it necessary.

IT IS SO ORDERED.

Dated: April 9, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge