Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Jamie Fountain (SBN 316567)
jfountain@blakelylawgroup.com
Iain Hill (SBN 336825)
ihill@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

**Attorney for Plaintiff**
**Deckers Outdoor Corporation**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br>    Defendants. | CASE NO. 2:20-cv-09521-FLA-E<br><br>**JOINT CLAIM CONSTRUCTION STATEMENT** |

Plaintiff, DECKERS OUTDOOR CORPORATION ("Deckers") and the Defendant, WALMART, INC. ("Walmart") hereby submit a Joint Claim Construction Statement in accordance with the Court's April 9, 2024 Order (Docket 112).

A.  **CONSTRUCTION OF AGREED TERMS**

Pursuant to this Court's April 9, 2024 Order, the parties exchanged proposed terms for construction on June 6, 2024 and June 12, 2024. (Attached hereto as Exhibit A is a true and correct copy of Deckers' Proposed Terms for Construction). Below at Section c. and d. are Walmarts' Proposed Terms for Construction.[1] [2]

i.  **Deckers' Position**

It is Deckers' position that, since this case involves design patents, as opposed to utility patents, there are no "terms" per se to construe. Further, Deckers notes that during the hearing on Defendant's Motion for Summary Judgment the "parties agreed the D '941 [Patent] should be construed based solely on the drawing presented in the patent and that there was no need for a Markman hearing." *See* ECF No. 112, p. 7, ln. 9-11.

Walmart's detailed verbal claim constructions distract from the overall visual impression of the claimed designs. Deckers maintains that the claimed design in the '941 Patent is highly ornamental and not dictated by function as there

---

[1] Much of Deckers arguments in this "Joint Brief" have been inserted by way of ambush. Despite having full knowledge of Walmart's arguments via its Initial Disclosure of Non-Infringement Contentions, as ordered by this Court, and both parties having turned initial drafts of this document by June 12, 2024, the first time that Deckers ever set forth the arguments at p.1 ll 10-21, p.4 ll 1-20, p. ll 5 3-19, pp. 6-7 was 4:30pm Eastern Time June 14, 2024.

[2] Walmart takes issue with Deckers' responses herein to Walmart's claim construction, which was provided to Deckers on June 12, 2024 at 6:26 p.m. Pacific Time (9:26 p.m. Eastern Time). Generally, courts provide the plaintiff with an opportunity to file a reply or rebuttal to a defendant's proposed claim construction (*see* Northern District of California Patent Local Rules, Rule 4-5). Here, it is reasonable to conclude that Walmart's chagrin is due to its failure to mislead this Court regarding inapplicable case law.

are myriad of alternative designs that accomplish the functions that Walmart identifies. Properly construed, the '941 Patent claims the overall visual appearance of what is shown in the patent's figures. The Court should adopt Deckers' construction and reject Walmart's detailed verbal descriptions.

### ii. Walmart's Position

Walmart disagrees and submits that Deckers' approach to construction is in violation of and an affront to this Court's Order on Motion for Summary Judgment ("Order"), which explicitly calls for identification and confirmation of the functional elements of the design patent claim as opposed to a potentially protectable design. [D.E. 112 at p.7]. In accordance with the Order, Walmart hereby submits its Proposed Terms for Construction.

Accordingly, despite the Court's intention that the instant filing be a joint brief, there has been no input by Deckers as to the functionality element.

Walmart further objects to changes Deckers has made to its proposed description of the drawings from Disclosure of Asserted Claims and Contentions ("PIC") such as removing "a platform sole with furry footbed" and "a furry exterior", between the time of the PIC and the current document (Exhibit C – PIC). Deckers neither sought permission, nor did it, amend its PIC by the time of this draft.

**B.     PARTIES' PROPOSED CLAIM CONSTRUCTION**

*(1)     Deckers' Proposed Claim Construction*

"[T]he interpretation and construction of patent claims, which define the scope of the patentee's rights under the patent, is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed.Cir.1995), aff'd, 517 U.S. 370 (1996). In cases involving design patents, "design patents have no written description or written claims to define their scope; the invention is defined by the overall visual impression that the drawings convey."

1  *LKQ Corp. v. GM Glob. Tech. Operations LLC,* 2024 U.S. App. LEXIS 12139,
2  *29-30. (Fed. Cir. 2024) (citing *Egyptian Goddess, Inc. v. Swisa Inc.*, 543 F.3d
3  665, 679-80 (Fed. Cir. 2008) (a design claim is better represented by an
4  illustration).

5  Defendant takes the position that because the Federal Circuit has allowed
6  verbal construction in the past for cases involving design patents, and that because
7  on occasion courts have found such to be necessary, that the same should occur
8  here. Plaintiff disagrees and the cases relied on by Defendant are distinguishable
9  from this case.

10  Notably, this case is distinguishable from *Richardson* which involved a
11  "multi-function [carpentry] tool [which combined a conventional hammer with a
12  stud climbing tool and a crowbar' *comprise[d] several elements that are driven*
13  *purely by utility*." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed.
14  Cir. 2010) (emphasis added). While the *Richardson* court ultimately found it
15  appropriate to provide a verbal construction omitting the purely functional
16  elements of the multi-function tool, in 2019 this district ruled that such an element
17  by element analysis is not required in cases similar to the one here. In *Nike, Inc. v.*
18  *Skechers U.S.A.,* which involved a design patent on footwear, the *Nike* court
19  distinguished *Richardson* because the multi-function tool at issue in *Richardson*
20  "comprise[d] several elements that are driven *purely* by utility." *Nike, Inc. v.*
21  *Skechers U.S.A.*, No. LA CV17-08509 JAK (Ex), 2019 U.S. Dist. LEXIS 239086,
22  at *13 (C.D. Cal. Mar. 28, 2019) (emphasis added).

23  First, as discussed below the elements of the design in the '941 Patent are
24  not *purely* functional so a verbal construction is unnecessary. Second, the Federal
25  Circuit has advised that "the preferable course ordinarily will be one of the district
26  court not to attempt to 'construe' a design patent by providing a detailed verbal
27  description of the claimed design." *Egyptian Goddess, Inc. v. Swisa Inc.*, 543 F.3d
28

at 679. Attempting a detailed verbal construction risks placing "undue emphasis on particular features of the design and the risk that the finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Id*. at 679-80; *see also Crocs, Inc. v. U.S. Int'l Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010); *Dahon N. Am., Inc. v. Hon*, 2012 U.S. Dist. LEXIS 177673, 3-4 (C.D. Cal. Dec. 14, 2012).

Here, the properly construed-claims comprise the overall visual impressions of what is shown in the figures of the '941 Patent. *See Crocs,* 598 F.3d at 1302. Because the '941 Patent includes multiple figures, and because the overall visual impressions of the claimed designs result from a combination of visual cues within each figure, dissecting the designs into words improperly divorces the visual claim from its overall appearance. A detailed verbal claim construction fails because the '941 Patent's figures show what they show regardless of the words used to describe them. Provided that the appropriate focus of the claims is communicated through appropriate jury instructions, a detailed, element-by-element verbal claim construction is not necessary. *Nike, Inc. v. Skechers U.S.A*., No. LA CV17-08509 JAK (Ex), 2019 U.S. Dist. LEXIS 239086, at *15 (C.D. Cal. Mar. 28, 2019). The reality of Walmart's construction is driven by a hoped-for tactical advantage in both overcomplicating and confusing a straightforward design patent. Indeed, Walmart's approach to construction risks changing the claims by trying to describe them in a certain way and the Court should reject Walmart's constructions because they improperly dissect the claimed design and subjectively describe isolated design elements.

Deckers further reserves the right to provide expert testimony on the issues of claim construction in response to any expert testimony produced by Defendants.

Based on these principles, Deckers proposes the following construction of the claims in the patents-in-suit as follows:

### a. D866,941 Patent

The ornamental design for a portion of a footwear upper and midsole as shown in the figures of the D866,941 Patent (FIGS. 1 – 7). The broken lines in the figures represent portions of the footwear that form no part of the claimed design. Broken lines set forth the bounds of the claimed design and form no part thereof.

### i. The '941 Patent Elements are Not Presumptively Functional

Defendant falsely purports that *all* elements of the '941 Patent are presumptively functional. Plaintiff reminds the Court that the '941 Patent was fully prosecuted by the USPTO and issued as a design patent finding that the design patent is not functional. The following is instructive and sets the correct context for all analysis to be considered:

> "To be patentable, a design must be 'primarily ornamental.' "In determining whether a design is primarily functional or primarily ornamental the claimed design is *viewed in its entirety*, for the ultimate question is not the functional or decorative aspect of each separate feature, but the *overall appearance* of the article, *in determining whether the claimed design is dictated by the utilitarian purpose of the article*."

*See L. A. Gear Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123, (Fed. Cir. 1993) (emphasis added.)

Second, Defendant conveniently overlooks that while design patents protect the ornamental appearance of articles of manufacture, they may protect the look of things that perform functions. Unless a design is "purely functional" such that its appearance is "dictated by function," the Federal Circuit has explained that a patented design has protectable, ornamental scope. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333-34 (Fed. Cir. 2015). Moreover, the ornamental scope of design features that perform functions *must* be considered as part of the overall appearance of the claimed design. *Sport Dimension, Inc. v. Coleman Co.*,

820 F.3d 1316, 1321-22 (Fed. Cir. 2016); *Ethicon*, 796 F.3d at 1329 ("[T]he claimed design viewed in its entirety—is the basis of the relevant inquiry, not the functionality of elements of the claimed design viewed in isolation."). In rare circumstances, where a court has found that the appearance of a claimed design is "dictated" solely by function because it is "purely functional," the Federal Circuit has permitted design elements to be "factored out" of a design patent. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010).

Here, Walmart alleges that aspects of the design in the '941 Patent (ie. the strap, vamp, footbed, midsole, and sole) perform functions; however, Walmart fails to consider whether they are *purely* functional. Instead, the design in the '941 Patent is highly ornamental. When evaluating alleged design functionality, courts "have often focused […] on the availability of alternative designs as an important – if not dispositive – factor in evaluating the legal functionality of a claimed design." *Ethicon*, 796 F.3d at 1329-31 ("[T]o be considered an alternative, the alternative design must simply provide the same or similar functional capabilities."); *Avia Grp. Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665. Because there are multiple alternative designs that perform the same or similar functions, the features identified by Defendant are not "functional" in the legal sense.

Finally, Defendant improperly presents its claim construction as if a utility patent were at issue. Here, Defendant presents multitudes of computer generated images with redline enhancements to create the false impression that extensive functional qualities exist and require interpretation. The redundant images are nowhere to be found in the patent application. Plaintiff reminds that there are only seven (7) figures provided in the '941 Patent and that parties agreed construction should be based solely on the patent figures. The agreement did not provide for adding figures to the file wrapper.

*(2)   Walmart's' Proposed Claim Construction*

**a. The Court Should Construe the Design Patent Claims Narrowly and to Define Ornamental versus Functional Elements of the Design.**

As the Court recognized in the Order, [D.E. 112 at pp. 6-7], claim construction is the process of determining the meaning and scope of the patent claims. *Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995)* (en banc), *aff'd*, *517 U.S. 370, 116 S. Ct.* 1384, 134 L. Ed. 2d 577 (1996). See also *Lanard Toys, Ltd. v. Dolgencorp LLC,* 958 F.3d 1337, 1341 (Fed. Cir. 2020). As to how the process is determined is a matter for the court. *Teva Pharms. USA, Inc. v. Sandoz, Inc.,* 574 U.S. 318, 135 S.Ct. 831, 840-41, 190 L. Ed. 2d 719 (2015).

Unlike utility patents, design patents "typically are claimed as shown in drawings." *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 679 (Fed. Cir. 2008) (quoting *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1319 (Fed. Cir. 2007)). Claim construction can assist in distinguishing between those features of the claimed design that are ornamental and those that are purely functional, *see OddzOn Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1405 (Fed.Cir.1997).  In giving guidance as to how claim construction should be articulated, the Federal Circuit has squarely rejected the notion that verbal claim constructions for design patents, where necessary, are disfavored. See *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010). A court cannot "effectively construe design claims, where necessary, in a way other than by describing the features in the drawings." *Id.*

The Federal Circuit held that if a court "regard[s] verbal elaboration as necessary or helpful," a court can issue a relatively detailed verbal description of the design: "the level of detail to be used in describing the claimed design is a matter within the court's discretion, and absent a showing of prejudice, the court's decision to issue a relatively detailed claim construction will not be reversible error." *Egyptian Goddess*, 543 F.3d at 679. Furthermore, in *Richardson*, the Federal Circuit held that "[a] claim to a design containing numerous functional elements ... necessarily mandates a narrow construction." *Richardson* 597 F.3d at 1294; see also *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1321-23 (Fed. Cir. 2016) (discussing the appropriateness of a district court's "narrow" claim construction). The law therefore establishes that details verbal elaboration of ornamentation over functional aspect is encouraged and should be narrowly construed.

This, Defendant submits, submit is exactly what the Court envisaged in its Order as the information provided to that point was lacking. [D.E. 112 at pp. 6-7] Here, Deckers has simply pointed the Court back to that which the Court previously found wanting and remains the case.

### b.  D866,941 Patent construction for Non-Functional Elements

It is crucial to note that every portion of the '941 patent is presumptively functional for the footwear to operate as it should. A strap holds the foot in the shoe, as does a vamp, a footbed attached to the vamp is required for a cushioning sole for the foot, a midsole is a cushioned layer that connects the upper to the outsole and a sole contacts the ground. Deckers was provided ample opportunity by the Court and Walmart to engage in the functionality versus ornamentality exercise as ordered by the Court, but stolidly refused to do so. Walmart does not claim the claimed design is bereft ornamentality but is simply to define what is, and what is not ornamental or functional, and has had to do so in a vacuum.

The Plaintiff recognizes PIC p. 2 "[a] design patent only protects the novel, ornamental features of the patented design," not the functional aspects of the design. *OddzOn Products, Inc. v. Just Toys, Inc.,* 122 F.3d at 1405. An element of the claimed design is functional if its' appearance is "dictated by the use or purpose of the article." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1328 (Fed. Cir. 2015). "Where a design contains both functional and nonfunctional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prod., Inc.*, 122 F.3d at 1405.

In response to its cited law, and presumably in response to the Court's Order of requiring contentions to assist the Court in determining the functional versus protectable aspect of the '941 patent, Deckers curtly and self-servingly asserts at PIC p. 3 "[h]ere, the claim of the '941 Patent is ornamental and none of the features are primarily functional", without any substance, explanation or adherence to the Order. Plaintiff then simply shows images of the '941 patent alongside the accused product without a word about functional elements and distinct ornamentality, let alone any analysis anticipated or expected by the Court. Simple repetition does not give Decker's position more force. Despite it being Plaintiff's burden to show infringement, Walmart provides a chart below showing the functional features and how and presumed ornamentality is different. We trust that the chart will help identify the elements of ornamentality for the Court, add defined terms that can be referenced with relative ease, and lay to rest the allegations that an ordinary observer would confuse the ornamental features, considering the prior art. It is worthwhile keeping in mind that the prior art also helps define the scope of the drawings for this reason.

Prior art has already been provided, attached to the expert report of Lenny Holden [Dkt. 64-34] and will be supplemented as Defendant provides its invalidity contentions and prior art on before June 28, 2024 in accordance with the Order.

The Court should also be aware that a very recent Federal Circuit decision changed the playing field in that the scope of prior art to determine obviousness is greater than that traditionally accepted by the Courts in past, and the scope of prior art in the matter is expected to be enlarged as well, given this new guidance. See *LKQ Corp. v. GM Global Tech. Operations LLC*, No. 21-2348, slip op. at 15 (Fed. Cir. May 21, 2024) (en banc).

### c. Construction

The claimed design is a portion of a footwear upper and midsole as shown in the figures of the D866,941 Patent (FIGS. 1 – 7).

The patent drawings show:

i) a functional vamp;

ii) with four pronounced rounded and distinct equal width segments;

iii) that extend over the side of the midsole and;

iv) descend relative to the midsole from heel to toe, where the toe segments are longer than the collar segments, providing a narrowing but convex shape

v) attached to a functional sling back;

vi) over a functional midsole having a partially disclaimed footbed and partially disclaimed sole where;

vii) the midsole material stretches significantly over the edge of the top and bottom of the sole, resulting in a distinct shape,

viii) the midsole having a functional snub nose toe section that is lifted, revealing the sole, to protect the toe section during outdoor use

All of the depicted features, including the vamp, the strap, and the midsole are functional features and the scope of the design patent claim is limited to the ornamental aspects, if any, of such features.

### d. Chart by Walmart

The below chart had constructed and annotated, to assist the Court in understanding the features, elements and limitations of the claimed design. In should go without saying that the annotations in red do not feature on the patent drawings themselves but have been added in for the purposes of this exercise

CLAIM
1. The ornamental design for a footwear upper and midsole, as shown and described.

| Description | | Construction |
|---|---|---|
| | The claimed design is a portion of a footwear upper and midsole, as depicted in Figures 1-7 of the '941 patent. | |
| FIG. 1 is a front perspective view of a Footwear Upper and Midsole | | A functional vamp portion containing a disclaimed footbed with 1) four pronounced rounded and distinct equal width segments that extend over the edge of the midsole 2) with a functional sling back band. |
| Annotated drawings highlighting lines the relevant areas noted | | |
| FIG. 2 is a side elevational view thereof | FIG. 2 | A further view of 1) four pronounced rounded and distinct equal width segments that extend over the edge of the midsole 2) with a functional sling back band, 3) a midsole ending in a functional snub nose toe section revealing the sole, to protect the front during outdoor use 4) the arc of the overlap of segments on the midsole descends from heel to toe |
| Annotated drawings highlighting lines the relevant areas noted | FIG. 2 | |

| | | |
|---|---|---|
| Annotated drawings highlighting lines the relevant areas noted | FIG. 2 | |
| Annotated drawings highlighting lines the relevant areas noted | FIG. 2 | |
| FIG. 2 is a side elevational view thereof | | A further view of 1) four pronounced rounded and distinct equal width segments that extend over the edge of the midsole 2) with a functional sling back band, 3) a midsole ending in a functional snub nose toe section revealing the sole, to protect the front during outdoor use 4) the arc of the overlap of segments on the midsole descends from heel to toe |
| Annotated drawings highlighting lines the relevant areas noted | FIG. 2 | |
| FIG. 3 is an opposite side elevational view thereof | FIG. 3 | Same as figure 2 above from opposite elevation |
| Annotated drawings highlighting lines the relevant areas noted | FIG. 3 | |

| | | | |
|---|---|---|---|
| | Annotated drawings highlighting lines the relevant areas noted | FIG. 3 | |
| | Annotated drawings highlighting lines the relevant areas noted | FIG. 3 | |
| | FIG. 4 is a front elevational view thereof | FIG. 4 | Further showing a 3) a midsole ending in a functional snub nose toe section revealing the sole, to protect the front during outdoor use 6) where the rear of the sole is smaller and not visible from the front elevational view |
| | Annotated drawings highlighting lines the relevant areas noted | FIG. 4 | |
| | FIG. 5 is a rear elevational view thereof | FIG. 5 | Further showing 6) a pronounced narrowing sole shape from toe to arch and then to heel of the midsole |
| | Annotated drawings highlighting lines the relevant areas noted | FIG. 5 | |

| | | |
|---|---|---|
| **Annotated drawings highlighting lines the relevant areas noted** | FIG. 6 | Further showing 6) a pronounced narrowing sole shape from toe to arch and then to heel of the midsole and 7) the toe segments are much longer than the collar segments, providing a narrowing but convex shape |
| FIG. 6 is a top plan view thereof | FIG. 6 | |
| | FIG. 6 | |
| FIG. 7 is a bottom plan view thereof. | FIG. 7 | Further showing 6) a pronounced narrowing sole shape from toe to arch and then to heel of the midsole, 8) the material stretches significantly over the edge of the sole, ending in distinct shape 9) the rounded vamp segments protrude beyond edges of the midsole |
| **Annotated drawings highlighting lines the relevant areas noted** | FIG. 7 | |

1 | DATED: June 14, 2024 | BLAKELY LAW GROUP

By: /s/ Jamie Fountain
Brent H. Blakely
Jamie Fountain
Iain Hill
**Attorneys for Plaintiff
Deckers Outdoor Corporation**

DATED: June 14, 2024 | GS2 LAW PLLC

By: /s/ Robert Garson
Robert Garson
Michael Steinmetz
**Attorneys for Defendant**